FORD MOTOR COMPANY, Appellant,

v.

Ronnie POOL and Wife, Nita Ann
Pool, Appellees.

No. 9315.

Court of Appeals of Texas,
Texarkana.

Jan. 29, 1985.

Rehearing Denied March 5, 1985.

Richard Grainger, Paul Colley, Jr., Grainger, Patterson, Howard & Colley, Tyler, for appellant.

Rex Houston, Wellborn, Houston, Adkison, Mann & Sadler, Henderson, for appellees.

CORNELIUS, Chief Justice.

Ford Motor Company appeals from a judgment awarding $5,483,571.00 to Ronnie Pool and Nita Pool in a personal injury products liability action. In seventeen points of error Ford raises issues dealing with the propriety of the jury submission on liability, prejudicial testimony and conduct at trial, exclusion of evidence, propriety of the jury finding that Pool was not negligent, and excessiveness of damages. We reverse because we find there was error in excluding Ford's evidence concerning Pool's prior violent tendencies and marital problems, and that the jury finding of no

contributory negligence is against the great weight and preponderance of the evidence.

## THE LIABILITY ISSUE

Ronnie Pool suffered brain injuries when his Ford pickup truck ran off the road and into a tree. Pool's theory of liability was that the fastening of the right rear U-bolt on the rear suspension came off, causing the truck to go out of control. He pleaded and introduced evidence on both design defect and manufacturing defect theories, but the only liability issue submitted to the jury did not distinguish between a manufacturing or a design defect, and essentially defined defectiveness according to the "consumer expectancy test."[1] Ford objected to the submission on the ground that this was a design defect case, and under *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979), only a risk-utility test could properly be submitted. Ford then requested that such a risk-utility instruction derived from *Turner*[2] be submitted to the jury.

■ There are two different definitions of defectiveness for use in products liability cases in Texas. In cases involving manufacturing defects, defectiveness is defined according to a consumer expectancy test as submitted in this case. *See Fitzgerald Marine Sales v. LeUnes*, 659 S.W.2d 917 (Tex.App.—Fort Worth 1983, writ dism'd); *Two Rivers Co. v. Curtiss Breeding Serv.*, 624 F.2d 1242 (5th Cir.1980). In design defect cases, defective design must be defined according to the risk-utility test stated by the Supreme Court in *Turner v. General Motors Corp.*, supra. *See Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex.1984). The approved definition is:

By the term "defectively designed" as used in this issue is meant a product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

The two definitions reflect the differences between the theories of recovery underlying manufacturing and design defect cases. The application of Section 402A of the Restatement (Second) of Torts (1965) to cases involving not only flawed products, but also to perfectly made but ill-designed products, has necessarily divided what was ostensibly a single theory of liability into two distinct theories. The distinction arises partly because of the inherent difference between the analysis centered on a flawed product and a product defectively designed.

■ Manufacturing defect cases involve products which are flawed, i.e., which do not conform to the manufacturer's own specifications, and are not identical to their mass-produced siblings. The flaw theory is based upon a fundamental consumer expectancy: that a mass-produced product will not differ from its siblings in a manner that makes it more dangerous than the others. Defective design cases, however, are not based on consumer expectancy, but on the manufacturer's design of a product which makes it unreasonably dangerous, even though not flawed in its manufacture. *See* Powers, *The Persistence of Fault in Products Liability*, 61 Texas L.Rev. 777 (1983); Keeton, *Product Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30 (1973). The consumer expectancy test is improper in design defect cases, then, because those cases are concerned only with the balancing of factors designed to determine if the risk of the design outweighs its utility.

1. The issue read:
   Was the right rear axle U-bolt assembly system defective at the time it left the possession of Ford Motor Company?
   "Defective" means a condition of the product that renders it unreasonably dangerous.
   An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary

   user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

2. The requested instruction read: "Unreasonably dangerous means taking into consideration the utility of the product and the risk involved in its use."

882

■ Because the consumer expectancy test was submitted in this case and was not restricted to a manufacturing defect, it is possible that the jury improperly applied the test to evidence of a *design defect* and found the product defective on that basis. However, it is Ford's burden to demonstrate that it was harmed by the submission of the issue. Tex.R.Civ.P. 434. To do so it must show there was no evidence or insufficient evidence to support a verdict based upon a manufacturing defect.

■ Considering only the evidence and inferences supporting the verdict, we find there was some evidence of a manufacturing defect. *See Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981). Plaintiffs' expert, Dr. Tonn, testified that in his opinion the U-bolts on the truck had not been torqued to the same degree. He testified "that they both were not torqued on to the same degree at the factory." The inference from this testimony is that a defect in the manufacturing process resulted in differing torque levels for U-bolts on the same truck. Although only Dr. Tonn testified specifically in favor of a manufacturing defect as the reason for the U-bolt's failure, the plaintiffs presented substantial evidence that the U-bolt had in fact fallen off. Ford presented evidence that the U-bolt came off the truck only upon impact with the tree, but the conflict in the evidence was for the jury to resolve and there was sufficient evidence to sustain its finding that the U-bolt was defective.

■ Since there was evidence of a manufacturing defect and Ford has not demonstrated that the jury was confused or misled by the ambiguous issue, any error in the submission was harmless. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex.1980). However, in order to avoid confusion in future cases where both manufacturing defect and design defect theories are alleged and supported by evidence, the issue should be restricted to one theory or another. Where issues on both theories are submitted the issues should be separated and the jury should be instructed only according to the *Turner* risk-utility test in

the defective design issue, and the consumer expectancy test in the manufacturing defect issue.

EXCLUSION OF EVIDENCE

■ Pool offered damage evidence to the effect that because of the injuries he received in the accident he would in the future be more prone to violent conduct, to lose his temper, and to become unduly irritated and annoyed at minor everyday occurrences. In rebuttal Ford offered evidence that prior to the accident Pool had engaged in violent conduct toward his former wife, and that she had placed him under a peace bond on two occasions. The court refused to admit the evidence. Pool's current wife, Nita, made a claim for loss of consortium, past and future, resulting from Pool's injuries. In rebuttal of that claim Ford offered evidence showing that Pool had filed for a divorce from Nita, that Nita had sought a restraining order prohibiting Pool's mother from interfering with their marriage, and that Nita and her husband had been and were separated. The court refused to admit the evidence.

Tex.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 allows the exclusion of relevant evidence only when its relevance is substantially outweighed by unfair prejudice. The rule represents a codification of the rule announced by the Texas Supreme Court that courts should not exclude evidence without "very good cause." *Davis v. Davis*, 521 S.W.2d 603 (Tex.1975); *Texas Rules of Evidence Handbook*, 20 Houston L.Rev. 1 (1983) (commentary by Professor Newell Blakely).

■ In this case each of the items of proof offered by Ford would have responded directly to proof introduced by Ronnie and Nita Pool on material elements of their

causes of action, and none would have opened new areas of inquiry or injected substantially prejudicial facts. The evidence would have directly rebutted the damage testimony offered by Pool, and would have in all probability affected the amount of damages awarded. Thus, the exclusion was harmful error. Tex.R.Civ.P. 434. Pool argues that the evidence was immaterial on the consortium claim since the trial court ordered a remittitur of the damages awarded for future consortium. We disagree. The evidence was also relevant to the value of past consortium.

## THE ISSUE OF POOL'S NEGLIGENCE

The jury found that Ronnie Pool was not contributorily negligent and assigned no percentage of comparative causation to him. The contributory negligence issue was submitted in a checklist form. Two of the alleged negligent acts were driving while intoxicated and speeding. Ford attacks the factual sufficiency of the jury's answer to this special issue in arguing that such findings are against the great weight and preponderance of the evidence.

■■ Because statutes prohibiting driving while intoxicated and speeding are safety statutes setting minimum standards of care, the jury was not permitted to decide that either of those acts did not constitute negligence. Thus, the jury's finding that Pool was not negligent can be sustained only if there is sufficient evidence that Pool was not, in fact, intoxicated and was not, in fact, speeding at the time his vehicle left the road.

Ford produced evidence showing that immediately after the accident Pool had alcohol on his breath, there was a twelve-pack of beer near the truck and an open half can of beer in his truck, and hospital records taken at the time of his admission to the hospital showed that he had a blood alcohol content of 0.119.[3]

■■ The only evidence produced by Pool on the issue of intoxication was the testimony of several relatives and acquaintances who saw him at the American Legion Hall and other places during the several hours before the accident, and who said they noticed nothing unusual about his actions and in their opinion he was not intoxicated. There was no evidence to impugn the validity or reliability of the blood alcohol test. Considering all the evidence on the issue, we find insufficient evidence to overcome the presumption of intoxication raised by the blood test, and therefore hold that the jury's finding on this issue is against the great weight and preponderance of the evidence.

■■ Likewise, there was no real evidence that tended to prove that Pool was traveling at anything less than a speed of sixty miles per hour. Officer Waldie testified that in his opinion the vehicle was traveling at a speed in excess of seventy miles per hour. Pool's accident reconstruction expert made a casual reference to fifty miles per hour, but when directly asked what his findings were he asserted that the speed at the time the U-bolt fell off was approximately sixty miles per hour. He testified that in his opinion such a speed was not unreasonable, but the prima facie reasonableness of such a speed has been foreclosed by statute. Tex.Rev.Civ.Stat. Ann. art. 6701d, § 166 (Vernon 1977). In the absence of one of the recognized exceptions to such a standard setting statute, conduct in violation of it is negligence per se. Without evidence of probative value rebutting excessive speed and without any evidence of emergency, incapacity, or impossibility, the statutory violation was established as a matter of law and the jury's answer must be disregarded. *Moughon v. Wolf,* 576 S.W.2d 603 (Tex.1978). Although Pool argues that error is not shown because neither intoxication nor excessive speed was a proximate cause of the wreck, that issue is a matter for the jury to deter-

---

**3.** At the time of the accident in question, Tex. Rev.Civ.Stat.Ann. art. 6701*l*–5, § 3(a) (Vernon 1977), provided that the presence of 0.10 percent alcohol by weight in a person's blood raised a presumption of intoxication. Article 6701*l*–1(a)(2)(B) (Vernon Supp.1984), effective 1–1–84, declares that 0.10 or more is intoxication.

mine. And, because no attack is made on the legal sufficiency of the jury's finding concerning intoxication and speed, the issue must be relitigated. *Glover v. Texas Gen. Indem. Co.,* supra.

Because of our disposition of the other points it is not necessary that we pass upon the allegations concerning prejudicial conduct during the trial and the excessiveness of the damage awards.

The judgment of the trial court is reversed and the cause is remanded for a new trial.