Ronnie POOL et ux., Petitioners,

v.

FORD MOTOR COMPANY,
Respondent.

No. C–4097.

Supreme Court of Texas.

April 2, 1986.

Rex Houston, Wellborn, Houston, Adkinson, Mann & Sadler, Henderson, for petitioners.

Richard Grainger, Grainger, Patterson, Howard & Colley, Tyler, for respondent.

## OPINION ON MOTION FOR REHEARING

KILGARLIN, Justice.

Our opinion of February 12, 1986 is withdrawn and the following is substituted.

This is a products liability action arising out of an alleged defect that caused Ronnie Pool's Ford pick-up truck to go out of control. Pool sustained serious head injuries when his truck ran off the road and collided with a tree. Pool and his wife brought this suit against Ford Motor Company alleging design and/or manufacturing defects which caused the right rear suspension system U-bolt to fall off, which, in turn, caused the accident.

The jury found that the U-bolt assembly system was defective when it left the possession of Ford Motor Company and that such defect was a producing cause of the accident. The jury failed to find that Pool was negligent in driving his pick-up while intoxicated, driving at an excessive rate of speed, in permitting his pick-up to veer off

the road, or in failing to wear his seat belt. The trial court rendered judgment for Pool based on these findings and those of the jury relating to damages. The trial court subsequently ordered a remittitur of Mrs. Pool's damages for loss of future consortium and a small amount of Pool's medical expenses.

The court of appeals reversed the judgment and remanded the cause for a new trial. 688 S.W.2d 879. It held that there was error in excluding Ford's evidence concerning Pool's relationship with his former wife and marital problems with his present wife. The court also held that the jury's failure to find no contributory negligence was against the great weight and preponderance of the evidence. We affirm in part and reverse in part the judgment of the court of appeals and remand this cause to that court.

The Pools initially complain of the court of appeals' holding that the jury's failure to find that Ronnie Pool was contributorily negligent was against the great weight and preponderance of the evidence. We hold that the court of appeals committed errors of law in their review.

The court of appeals held that:

Because statutes prohibiting driving while intoxicated and speeding are safety statutes setting minimum standards of care, the jury was not permitted to decide that either of those acts did not constitute negligence. Thus, the jury's finding that Pool was not negligent can be sustained only if there is sufficient evidence that Pool was not, in fact, intoxicated and was not, in fact, speeding at the time his vehicle left the road.

688 S.W.2d at 883. Thus, the court of appeals apparently confused negligence per se with common law negligence. The court of appeals noted that the statute in effect at that time provided for a presumption of intoxication if a person's blood alcohol level was greater than 0.10 and then noted that evidence showed Pool had a blood alcohol level of 0.119. *Id.* The court of appeals went on to find "insufficient evidence to overcome the *presumption* of intoxication

raised by the blood test." *Id.* (emphasis added).

Similarly, the court of appeals held that another statute made Pool's speed prima facie unreasonable. *See* Tex.Rev.Civ.Stat. Ann. art. 6701d, § 166 (Vernon 1977). The court stated "[w]ithout evidence of probative value rebutting excessive speed and without any evidence of emergency, incapacity, or impossibility, the statutory violation was established as a matter of law and the jury's answer must be disregarded." 688 S.W.2d at 883.

■ In both instances, the court of appeals misapplied the applicable statutes. The DWI statute in effect at the time of this accident did not provide for a presumption of intoxication in civil actions. Act of June 4, 1969, ch. 434, §§ 1–3, 1969 Tex.Gen. Laws 1468–70, *amended by* Act of June 16, 1983, ch. 303, § 4, 1983 Tex.Gen. Laws 1568, 1577–85. In fact, the 1971 amendment to the statute specifically provided that the presumption of intoxication would not apply in civil actions. Act of June 7, 1971, ch. 709, § 3, 1971 Tex.Gen. Laws 2340, 2342. Thus, the court of appeals clearly erred in giving presumptive weight to Pool's blood alcohol test.

■ The court of appeals also apparently overlooked the statute which provides that "the provision of this act declaring maximum or minimum speed limitations shall not be construed to relieve the plaintiff in any action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident." Tex.Rev. Civ.Stat.Ann. art. 6701d, § 171(b) (Vernon 1977). Thus, a finding of speed in violation of the statutory limit is incomplete in a tort action when it does not include a finding of negligence. *Davis v. Gatlin*, 462 S.W.2d 54, 57 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.).

As the Pattern Jury Charges note, in a civil action the key issue is the reasonableness of the speed given the circumstances, not the violation of the statutory limit. *See* 1 State Bar of Texas, *Texas Pattern Jury Charges* P.J.C. 5.02 (1970). In fact, the

drafter's comment to this section explicitly states that "this submits the common law duty of the driver of a vehicle not to drive at an excessive rate of speed ... No issue submitting the violation of a specific speed limit is submitted because of the provision of § 171(b) of art. 6701d ..." *Id.*

That the court of appeals did not consider the evidence concerning the question of Pool's negligence in exceeding the posted speed limit is made clear by the evidence in the record regarding Pool's speed. The only evidence as to the reasonableness of the speed comes from the police officer who investigated the accident and the plaintiffs' accident reconstruction expert witness. The police officer testified as follows:

"Q. Is that a reasonable speed at any place?

A. No it's not."

The officer had previously testified that he estimated Pool's speed to be 70 m.p.h. Contrary to the officer's testimony, the plaintiff's expert testified that he believed that Pool was traveling at 60 m.p.h. The following exchange then took place:

"Q. Is 60 an unreasonable rate of speed to be driving on an open highway?

A. Not in Texas."

Thus, we hold that the court of appeals erred in treating the statutory violation of the speed limit as negligence per se. Further, the court erroneously gave presumptive weight to a violation of the DWI statute.

After having found that the court of appeals applied incorrect standards in evaluating the contributory negligence allegations of speed and intoxication, we ordinarily would remand this cause to that court so that it might view factual insufficiency consistent with our instructions as to the correct standard of law. However, that would not be true if a party's insufficiency point was in reality a no evidence point, for we would have jurisdiction to decide that. In the court of appeals, Ford Motor Company made only one assignment of error in respect to the jury's refusal to find Pool negligent for either speeding or intoxi-

cation. That point of error, number 11, read as follows:

The trial court erred in entering judgment for the plaintiffs, because the jury's finding, in answer to Special Issue No. 6, that Ronnie Pool was not at all negligent in speeding, having a medically tested blood-alcohol level of .119, and failing to wear his seatbelt while driving under those conditions after midnight is so against the great weight and preponderance of the evidence as to be manifestly unjust.

This type of point of error has been previously held not to preserve factual insufficiency for review by the court of appeals. In *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276, 277 (Tex.1970), the supreme court said "[h]ence, a point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence—if it is adequate for any purpose—is only a 'no evidence' point." The point of error in this case is almost identical to the point raised in *Chemical Cleaning*.

Ford Motor Company and its amici contend that this court's holding in *Chemical Cleaning* was effectively overruled by the 1981 adoption of Tex.R.Civ.P. 418(d). Alternatively, they assert that if not already impliedly overruled, this court should now expressly overrule that decision.

Tex.R.Civ.P. 418(d), although since repealed, was "designed to reduce the technical requirements of briefs.... [and] while not abolishing points altogether, is consistent with a tendency to greater liberality in briefing rules and less formality in points of error." Comment, Tex.R.Civ.P. 418 (1984 Pamph.). The 1984 repeal of the rule did not imply an abandonment of the philosophy expressed in the comment. Indeed, the 1984 amendment to Tex.R.Civ.P. 469, by adding section (e), preserved the concept of permitting broader points of error. The simultaneous addition of Tex.R. Civ.P. 422, providing for liberally construing briefing rules, is further proof of this

court's desire to relax past rigorous requirements as to the wording of points of error. Additional evidence of this court's changed attitude was stated in *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). We said:

> The points of error do not specify whether they are directed to complaints of 'insufficient evidence,' 'no evidence,' 'against the great weight and preponderance of the evidence,' or 'as a matter of law.' It is our practice to liberally construe the points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants. Calvert, *'No Evidence' and 'Insufficient Evidence' Points of Error*, 38 Tex.L. Rev. 361 (1960). We look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party.

■ *Chemical Cleaning* represents a strictness of briefing requirements that is as foreign to current thinking as is demurrer to pleadings or granulated issues to broad submission of jury questions. We, therefore, overrule the application of that decision to cases when the complained error is readily apparent from the argument briefed.

■ It is obvious from the discussion under point of error 11, as well as the wording of the point, that Ford Motor Company intended it to be a complaint of factual insufficiency. Thus, we remand to the court of appeals for it to determine, pursuant to the correct standard, whether the jury's negative answers as to Pool's alleged speed and intoxication were against the great weight and preponderance of the evidence.

■ We do not remand, however, the seat belt allegation for a sufficiency determination. That involves a question of law and is controlled by *Carnation Co. v. Wong*, 516 S.W.2d 116, 117 (Tex.1974) (per curiam), when we held that plaintiffs "should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts." Moreover, we note that the legislature has ratified *Carnation*'s policy for future cases: "[u]se or non-use of a safety belt is not admissible evidence in a civil trial." Tex.Rev.Civ.Stat.Ann. art. 6701d, § 107C(j) (effective September 1, 1985). Therefore, we reaffirm that failure to wear a seat belt is not any evidence of contributory negligence. Although *Carnation* and the statute preclude reducing damages for injuries caused by not wearing a seat belt, in all other regards the *Duncan v. Cessna* formula remains: "[T]he system we adopt will allow comparison of plaintiff's conduct, whether it is characterized as assumption of risk, misuse, or failure to mitigate or avoid damages, with the conduct or product of a defendant, whether the suit combines crashworthiness or other theories of strict products liability, breach of warranty, or negligence." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex.1984).

■ As a further argument as to why this cause should not be remanded for factual sufficiency determination, the Pools allege that the court of appeals exercised its fact jurisdiction in such a way as to undermine the jury verdict in contravention of the constitutional guarantee of right of trial by jury. It is true that Texas Constitution article I, section 15, provides that the right of trial by jury shall remain inviolate, but it is the same Constitution in article V, section 6, that states that decisions of courts of appeals shall be conclusive on all questions of fact. The Pools' argument is not a novel one. Indeed, shortly after the 1891 adoption of the amendment creating the then courts of civil appeals and delineating their jurisdiction, this court recognized the potential constitutional conflict and sought to strike a balance. *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898).

In essence, Chief Justice Gaines, speaking for the court in *Choate*, wrote that it was in the province of the jury to determine questions of fact but it was in the power of courts of civil appeals to set aside the finding and to award a new trial. He stated:

It is contrary to the genius of our institutions, as well as to the letter and spirit of every constitution ever adopted in this State, to suppose that it was ever intended to substitute the judgment of the appellate courts upon the facts of a case in place of that of the jury, and to make the determination of these courts final.

91 Tex. at 410, 44 S.W. at 70. But, *Choate*, as did so many scholarly opinions which followed, sought to harmonize the two constitutional provisions by stating that while appellate courts could not find facts, if the jury finding was so against the great weight and preponderance of the evidence, the court of appeals could unfind facts and reverse the judgment and remand the matter for a new trial. *Id.*

A case probably as often cited as any other before this court, *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), alluded to the seeming conflict by saying:

But Article 5, § 6 of the Constitution, Vernon's Ann.St., is no more to be ignored than any other part of that document, and that provision, with the decisions, statutes and rules based upon it, requires the Court of Civil Appeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise.

150 Tex. at 666, 244 S.W.2d at 662.

Two former members of this court have provided insight into this vexing problem. Justice St. John Garwood posited the idea of constitutional change to eliminate the reference to "facts," saying that it "is confusing at best because a court of civil appeals has no power to find facts. It may only 'unfind' facts which a jury or trial judge has improperly found." Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Texas L.Rev. 803, 813–14 (1952). Former Chief Justice Robert W. Calvert utilized the distinction between fact finding and unfinding a vital fact. He stated "[m]oreover, action by a court in 'unfinding' a vital fact is not an unconstitutional usurpation of the right of trial by jury. The same Constitution which guarantees a right of trial by jury empowers Courts of Civil Appeals finally to decide all fact questions." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 368 (1960).

More recently, a current member of this court added his analysis of *In Re King's Estate*. He asserted that the holding never intended to allow courts of appeals to consider all of the facts and decide the case according to their interpretation of the evidence. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring). He stated that the courts of appeals should only exercise their fact jurisdiction to prevent a manifestly unjust result; and that those courts "are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Id.* But, Justice Robertson proposed no alternative interpretations to Texas Constitution article V, section 6.

While a cogent argument may be made in support of the right to hold that insufficient evidence exists to uphold a jury's affirmative finding, it becomes more difficult to rationalize why, when a jury fails to find a fact from a preponderance of the evidence, that non-finding should be set aside on a great weight and preponderance standard. That does appear to be allowing a substitution of thought processes.

Nevertheless, we do not choose to overrule *In Re King's Estate*. If a constitutional conflict exists, it remains to the electorate of this state to eliminate the conflict. Our present Constitution empowers the courts of appeals to "unfind" facts, even if they cannot "find" them. We choose to adhere to previous interpretations that harmonize the two constitutional provisions. The right of courts of appeals to review for factual insufficiency must continue undisturbed. The Pools' constitutional attack is overruled.

However, *In Re King's Estate* established that the supreme court might take jurisdiction, notwithstanding the finality of

judgments of the courts of civil appeals on fact questions, in order to determine if a correct standard had been applied by the intermediate courts. A litany of subsequently decided cases, including *Puryear v. Porter*, 153 Tex. 82, 264 S.W.2d 689 (1954), *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965), *Harmon v. Sohio Pipeline Co.*, 623 S.W.2d 314 (Tex.1981), and culminating with *Dyson v. Olin Corp.*, serve as examples of a variety of situations in which the supreme court has reviewed factual insufficiency points because the court of appeals had utilized an incorrect test.

And even as to factual insufficiency, it has been the supreme court that has delineated the role of the courts of appeals. *In Re King's Estate* mandated those courts to consider and weigh all of the evidence in the case in determining whether the evidence is insufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. This court, in that opinion, recognized that in performing this task, it was not simple to describe the intellectual process to be followed by the court of appeals; how it was that there could be probative evidence to support the verdict and at the same time not be sufficient evidence. 150 Tex. at 666, 244 S.W.2d at 662.

Chief Justice Calvert opined that a court of appeals "should analyze the evidence on both sides of the issue, at least in a brief and general way, and point out why the finding is regarded as being contrary to the great weight and preponderance of the evidence." Calvert, *supra*, at 368. Justice Garwood enumerated a few of the many instances when a verdict should be set aside and a new trial granted. He cited examples of "such as to shock the conscience," "so as to be clearly unjust," "to clearly indicate bias." He suggested that in arriving at an insufficiency holding, the court of appeals "must, up to a point, follow the same kind of mental process that a jury does." Garwood, *supra*, at 811. Recognizing the inexact standard set for the courts of appeals, Justice Garwood allowed that "[m]aybe some day we will develop more rules to aid trial courts and courts of civil appeals in dealing with this troublesome question." *Id.* at 812.

Our continuing review of courts of appeals decisions in which factual insufficiency points are discussed convinces us that the overwhelming majority of those opinions represent honest efforts by their scriveners to adhere to the guidelines of *In Re King's Estate*. However, there occasionally appears an opinion in which it seems that the court of appeals has merely substituted its judgment for that of the jury. Those opinions couch their holdings with the necessary "factual insufficiency" or "against the great weight and preponderance" language without providing analyses of the evidence or stating bases for the conclusions drawn. One recent opinion is particularly noteworthy in this regard. In it the court of appeals reversed a judgment on factual insufficiency grounds, saying "[t]he jury evidently believed Appellee's argument; we do not." It may well be that the court of appeals in that case and other courts in similar cases considered and weighed all the evidence before arriving at a decision of insufficiency. But, without that mental process being reflected by the opinion, it is impossible for this court to be certain that the requirements of *In Re King's Estate* have been followed.

■ In order that this court may in the future determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, when reversing on insufficiency grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. It is only in this way that we will be able to determine if the requirements of *In Re King's Estate* have been satisfied.

In subsequent points of error, the Pools complain of the court of appeals' reversal because of evidence excluded at trial. The excluded evidence was: (1) a copy of the divorce petition and supporting affidavit filed by Pool approximately six weeks before trial; (2) Mrs. Pool's testimony that Ronnie had said one month before trial he did not want to talk with her; (3) Mrs. Pool's testimony that she had placed a restraining order on Ronnie Pool's mother; (4) Pool's testimony that he was seeking a divorce and the reasons why; (5) Pool's testimony of difficulty with his former wife, that she had called the police, and that she had put him under a peace bond on at least two prior occasions.

We hold that the trial court's exclusion of this evidence, if error, did not amount to such a denial of Ford's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434, 503.

■ First, while evidence of marital discord would have been relevant to the issues of past and future consortium, the exclusion of evidence of divorce proceedings was harmless. Evidence of a contemplated divorce would have been relevant to future loss of consortium. But, the trial court ordered a remittitur of that entire amount of the jury's award. Regarding past consortium, Mrs. Pool testified before the jury that her husband had been living with his mother for almost three months prior to trial, that she was currently living at her grandmother's house and not at the Pools' home, and that the last time she had seen Ronnie Pool was more than one month prior to trial. Furthermore, on cross-examination, Ford's attorney asked Mrs. Pool about the allegations in the affidavit in support of the divorce petition (without revealing the existence of the divorce petition or affidavit). Even without hearing Ronnie Pool's reasons for wanting a divorce or that he did not desire to talk with his wife, the jury had before it evidence of estrangement between the Pools and could have considered that in making its award of past loss of consortium. Thus, the exclusion of the evidence concerning the divorce petition was harmless.

Moreover, Ford's only point of error in the court of appeals relating to the excluded evidence bearing on consortium was as to *pre-accident marital strife* (emphasis added). Nothing offered on the bill of exceptions even remotely indicates pre-accident strife between Ronnie and Nita Pool. To the contrary, Nita testified that prior to the accident Ronnie had never hit her, was not impulsive, and was "patience itself." After the trial judge ruled this testimony admissible, Ford declined to place it before the jury.

■ Next, Ford complained in the court of appeals of trial court error in excluding pre-accident evidence of violence and unpredictability. Nita Pool's testimony in this regard has just been noted. The trial court ruled it admissible. Other than this, the only bill of exceptions evidence relevant to this point was Pool's testimony regarding his relationshp with his former wife, which we will now consider.

Pool's medical expert did testify that Pool's admittedly serious head injury would make him more prone to violence than in the past. However, a reading of the entire record reveals that the "more prone to violence" aspect of Pool's injury was not asserted as a significant ground of damages. In fact, during closing argument, Pool's attorney did not mention this aspect of Pool's injury at all. The testimony by Pool on the bill of exceptions, admitting verbal arguments with his ex-wife but denying any physical attacks on her, was at best slight proof of a pre-injury disposition to violence. While Pool admitted that his former wife placed him under peace bonds and had called the police about him, Ford failed to develop the reasons for the calls to the police or for the peace bonds— whether it was for violent acts on Pool's part or something else. We cannot say from this record that the exclusion of this evidence amounted to such a denial of Ford's rights as was reasonably calculated to cause and probably did cause the rendi-

tion of an improper judgment in the case. Tex.R.Civ.P. 434, 503.

■ Finally, we agree with the trial court's ruling that Mrs. Pool's testimony that she placed Ronnie's mother under a restraining order was irrelevant and immaterial.

By way of cross-points, Ford offers alternative grounds to affirm the order remanding this cause for a new trial. Specifically, Ford contends that a new trial is warranted because of allegedly improper and prejudicial conduct on the part of one of the Pools' expert witnesses and the Pools' attorney. Ford also argues that a new trial is necessary because the trial court submitted an incorrect issue on the question of the defect.

■ Ford Motor complains that the expert twice violated a motion *in limine* prohibiting testimony about the expert's personal experience with Ford pick-up trucks. However, Ford failed to object to the first violation and interposed only a "non-responsive" objection to the second violation. Ford did not bring the violations to the trial judge's attention, nor did Ford move to instruct the jury to disregard the answers or move for a mistrial. Therefore, we hold that Ford did not properly preserve this alleged error. Just as we held in *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963), that if a motion in limine is overruled, an objection to the harmful question is necessary, we likewise hold that to preserve error as to an improper question asked in contravention of a sustained motion in limine, a timely objection is necessary. Otherwise, a trial court is denied the opportunity to make a curative instruction or mistrial ruling.

■ Ford also complains of the Pools' expert's remarks that Ford had planted evidence in other cases. Ford's attorney invited that type of response, however, when he asked the witness, "[a]re you telling this Jury that Ford perhaps is trying to mislead them and saying this is not the U-bolt that came from the vehicle ...?" We hold that Ford cannot now complain of that answer because it was invited by Ford's counsel, and the jury was instructed to disregard that remark.

■ Ford further complains of conduct by the Pools' counsel. During an objection to a question propounded by Ford's attorney, the following exchange took place:

> Mr. Houston: Wait just a second. That's not what your question was. You're trying to trick him, and trick the jury—
>
> Mr. Grainger: Your honor, I object to counsel saying I'm trying to trick—
>
> Mr. Houston: Wait until I finish my objection.
>
> The Court: Avoid sidebar remarks, both sides, please.

While such sidebar comments are to be avoided, *see* Tex.R.Civ.P. 269(f), we hold that no error was preserved because there was no ruling on Ford's objection, and the court cautioned both sides to refrain from such comments.

■ Lastly, Ford contends that the remand of this case should be affirmed because the submitted issue on defect was improper. This question was raised and considered in the court of appeals, and we affirm their holding in this regard. We agree that "in future cases where both manufacturing defect and design defect theories are alleged and supported by evidence, the issue should be restricted to one theory or the other. Where issues on both theories are submitted, the issues should be separated...." 688 S.W.2d at 882.

Accordingly, we affirm in part and reverse in part the judgment of the court of appeals. We remand to that court for it to consider Ford's factual insufficiency point as to Pool's negligence and the remaining points in that court attacking the damages award as being against the great weight and preponderance of the evidence. Ford Motor Company's motion for rehearing is granted insofar as preservation of its factual insufficiency point is concerned; otherwise it is overruled.

GONZALEZ, J., concurs.

**638**

GONZALEZ, Justice, concurring.

I concur with the court's opinion except that portion which deals with *In Re King's Estate*. The majority acknowledges that:

> Our continuing review of courts of appeals decisions in which factual insufficiency points are discussed convinces us that the *overwhelming majority* of those opinions represent honest efforts by the scriveners to adhere to the guidelines of *In Re King's Estate*. However, there *occasionally* appears an opinion in which is seems that the court of appeals has merely substituted its judgment for that of the jury.

715 S.W.2d p. 635 (emphasis added). So, if the system "ain't broke, don't fix it."

I believe the majority's discussion in regard to *In Re King's Estate* is unwarranted. The rule is well established that to raise a point of error before this court, the complaining party must have raised the point on motion for rehearing in the court of appeals. *Albright v. City of Houston*, 677 S.W.2d 487, 488 (Tex.1984); *Smith v. Baldwin*, 611 S.W.2d 611, 618 (Tex.1980). Further, the rule is equally well established that this court will not rule on a constitutional argument when other points are dispositive of the case. *San Antonio General Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1977). Neither party raised the constitutional issue regarding the court of appeals' exercise of its fact jurisdiction.

Although the court's discussion does not directly violate the well established rules of *In Re King's Estate*, the court is implicitly trying to prevent the court of appeals from second guessing the jury. I am fearful that this opinion may in turn be used to allow this court to second guess the courts of appeal. We cannot interfere with the fact jurisdiction of the court of appeals in contravention of our constitution. TEX. CONST. art. V, §§ 3, 6.

For the above reasons, I disagree with that portion of the majority opinion.