Lance v. USAA Ins. Co. 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-202-CV

        DAVID L. LANCE AND SHELLEY W. LANCE,
                                                                                       Appellants
        v.

        USAA INSURANCE COMPANY,
                                                                                       Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 52024
                                                                                                    

DISSENTING OPINION
                                                                                                    

          I dissent because I believe that the jury's failure to find damages for past physical pain is
so against the great weight and preponderance of the evidence that it clearly demonstrates bias. 
See Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).
          The jury determined that each party was 50% responsible for the collision of the vehicles. 
The jury then found that (1) Lance suffered no damages for physical pain and mental anguish or
for lost earnings and (2) Shelly Lance suffered no damages for lost consortium. The jury was
instructed in each question to consider both past and future damages. Without examining whether
the jury acted within its authority in failing to find damages for physical pain in the future, for past
or future mental anguish, for any lost earnings, or for past or future lost consortium, I believe that
the evidence overwhelmingly shows that Lance suffered past physical pain, and thus the jury's
failure to award any such damages demonstrates its bias against him. Id. 
          Lance testified without contradiction that as a result of the accident his left hand was
bleeding and that glass had to be removed from it. He said that he hit the air bag, which was "not
soft," and that his seat was "torqued totally out of kilter, twisting me from the front left down on
impact, twisted, apparently my spinal area." The ambulance driver told him there was not
enough room in the ambulance for him, so he asked the DPS officer at the scene to take him to
the hospital. He said that during the ride to the hospital he "almost blacked out. I was not
physically with it at the time." At the hospital, medical personnel removed the glass from his
hand, gave him medication, ice packs, and a sling for his shoulder. He said that he wanted to be
admitted to the hospital because he "was having problems in focusing and I was having problems
with [a] headache at that time from my head." Nevertheless, he was treated and released. 
          Two days later Shelly took Lance to Darnell Medical Center, a military hospital at Fort
Hood. There, they were told that he would not be treated because of the limited number of
doctors available, all others having been assigned to the war in Iraq. He said that he was "losing
consciousness." The next day Shelly took him to the Troop Medical Clinic at Fort Hood, where
he was given "general medications for pain." On his second trip to the clinic, he was "given a
temporary profile at that time to go home and rest."
          He testified that he was treated by Dr. Guttikonda for a period of six months, but had to
discontinue that after the personal injury protection allowance under his automobile insurance
policy was exhausted. He said that he continued to take "a lot of Motrin, a lot of other over-the-counter pain relievers." He continued to take pain medication for at least nine more months, when
the Veteran's Administration did a "series of tests to see about spinal injury and what was going
on." 
          He said that the pain he was experiencing at the time of trial, which he attributed to the
accident, included a burning in his lower back, pain in his neck, numbness in his left hand,
burning in his right fingers and thumb, and a sciatic problem in his left leg. He said that he had
"good days and bad days," but the pain had been "pretty consistent."
          Lance further testified that his condition resulted in his eventual release from the Army,
even though he wanted to stay on active duty. 
          Jerry Simmons, a vocational rehabilitation specialist who did an evaluation of Lance in
1995, testified that he reviewed Lance's medical records and that the series of tests that he ran
yielded results that were consistent with those records. He said that Lance had an orthopedic
disability that was causing him pain when he performed tasks like pushing, pulling, lifting, and
carrying. On cross-examination, Simmons said that Dr. Guttikonda had not recorded any
complaints of pain by Lance as early as June of 1991.
          Shelly Lance testified that her husband had not complained of back pain or neck pain prior
to the accident. She said that when she saw him in the emergency room in Waxahachie he had ice
packs, blue marks and cuts on his hands, and that his face was swollen. She said that over the
next two days he was very stiff, could not get his legs to straighten out completely, was very
bruised, and his neck and face remained swollen. After visiting the Troop Clinic, he continued
to have physical limitations. She said "he could not move around well. He had a very hard time
walking. He was limping. He could not stand up straight. He could not sit down in a chair for
any length of time. He had a hard time laying down. He could not sleep." During "several"
return visits to the Troop Clinic, he continued to complain of pain. He received physical therapy
during the six months he was treated by Dr. Guttikonda. At the end of that course of treatment,
he was still having pain, she said. She also said that he "has never had a time where he was
completely, totally out of pain," but it became "more manageable."
          USAA's evidence about problems that Lance had had with his back and knee raised doubts
about whether the injuries he received in the accident were the cause of his release from the
military. Some evidence indicated that he stopped complaining of pain in June of 1991. No
evidence, however, contradicted Lance's or Shelly's testimony about the amount of pain he had
suffered as a result of the accident between the date of the accident and June of 1991. Thus, I
conclude that the jury's refusal to award any sum for damages for past physical pain was contrary
to the great weight and preponderance of the evidence and clearly demonstrates bias against
Lance's claim. See id.; Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.—Fort Worth
1991, no writ).
          I would reverse the judgment and remand the cause for another trial.


 
 
                                                                                 BILL VANCE
                                                                                 Justice

Opinion delivered and filed November 20, 1996
Publish