**MORTON INTERNATIONAL,**
**Appellant,**

v.

**Jacqueline A. GILLESPIE and**
**Roderick S. Gillespie,**
**Appellees.**

**No. 06–99–00091–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 11, 2000.

Decided Jan. 12, 2001.

Linda K. McCloud, Beck, Redden & Secrest, LLP, Houston, Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold, San Francisco, for appellant.

Don L. Davis, Derek L. Davis, Byrd, Davis & Eisenberg, LLP, Austin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Morton International appeals from an adverse judgment rendered against it in Jacqueline and Roderick Gillespie's suit for damages resulting from extensive injuries sustained by Mrs. Gillespie as a result of an alleged delayed airbag deployment following an automobile collision. Morton contends (1) that the trial court erred in allowing one of the Gillespie witnesses to testify as an expert regarding manufacturing defects; and (2) there is legally and factually insufficient evidence to support the court's findings that the airbag malfunctioned or that a delay in deployment of the airbag was the producing cause of Mrs. Gillespie's injuries. We overrule these contentions and affirm the judgment.

In March of 1994, Mrs. Gillespie's vehicle, while stopped at an intersection, was struck by a Ford pickup truck. As a result of the impact, the airbag in her Plymouth Voyager minivan deployed and Mrs. Gillespie sustained severe injuries to the right side of her face. The airbag struck her face at approximately 200 miles per hour, shattering her right orbital socket, causing her to lose the use of her right eye and requiring that she have a glass implant placed in her permanently deformed right eye socket. Mrs. Gillespie and her husband initially filed suit against the manufacturer and seller of their vehicle, Chrysler Corporation and Lawrence Marshall Chevrolet–Olds, Inc. They later added Morton International[1] and TRW, Inc.[2] They later nonsuited as to Lawrence Marshall Chevrolet–Olds, Inc. pursuant to

Tex.R.Civ.P. 162. The Gillespies thereafter settled with Chrysler Corporation and TRW, Inc. for $500,000.00 and dismissed their suit as to those parties. After a bench trial, the court found in favor of Mrs. Gillespie against Morton, awarding her $950,000.00 in damages, reduced by the $500,000.00 she had previously received in settlement.

Morton argues that the trial court erred by allowing Dr. David Renfroe, a mechanical engineer, to testify as an expert about an alleged manufacturing defect in Mrs. Gillespie's airbag. In making the initial determination on admissibility of evidence, Texas courts must apply the principles set forth in the rules of evidence governing relevancy. *North Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94–95 (Tex.App.—Dallas 1995, writ denied); *see generally* Tex.R.Evid. 401–403. When the offered evidence is the testimony of expert witnesses, our courts must also apply the principles set forth in the rules governing expert testimony. *North Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d at 94–95; *see generally* Tex.R.Evid. 702–705. Before evidence is admissible, it must be relevant as defined by Rule 401. To meet the relevancy test of Rule 401, the evidence must have probative value and must be of consequence to some issue in the trial. *North Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d at 94–95; *see generally* Tex.R.Evid. 401; *Service Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ).

Rule 702 of the Texas Rules of Evidence governs the admissibility of expert testimony. The rule provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may

---

1. Morton is the manufacturer of the airbag assembly.

2. TRW is the manufacturer of the front impact sensor, which sends a signal to the airbag assembly for deployment.

testify thereto in the form of an opinion or otherwise.

In order to justify admission of the evidence, the proponent must establish that scientific, technical, or other specialized knowledge will aid the trier of fact and that the expert witness is qualified to testify on the subject. *North Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d at 95. Whether an expert is qualified is a preliminary question to be decided by the trial court. TEX.R. EVID. 104(a); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex.1998). The qualification of a witness as an expert is within the trial court's discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). We do not disturb the trial court's exercise of discretion absent a showing of clear abuse. The test for abuse of discretion is whether the trial court acted without reference to guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d at 558 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). As a reviewing court, we may not conclude that the trial court abused its discretion simply because we might have ruled differently in the same circumstances or because the trial court committed a mere error in judgment. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d at 558; *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d at 242.

According to the record, Dr. Renfroe has a doctorate in mechanical engineering, is a member of various professional engineering societies, and is a professor of vehicular dynamics at the University of Arkansas. Despite these credentials, Dr. Renfroe admitted that his training, education, and experience relating to airbags and their components was significantly lacking.[3] He did testify that he was familiar with the different types of sensors employed in airbag electronic triggering device systems.[4]

Despite not meeting the technical requirements set forth under Rule 702 as they relate to testimony about specialized knowledge regarding airbag technology,[5] Dr. Renfroe never exceeded the scope of his qualifications nor the scope of the testimony for which he was offered as an expert. His testimony dealt primarily with the effect of a delay in the airbag's deployment on Mrs. Gillespie's motion during the collision, and not on the more technical issues related to airbags and airbag component technologies. Mrs. Gillespie testified that at the moment of the collision, she was seated with her seat in a normal position and her hands at the ten o'clock and two o'clock positions, with her seatbelt on. Gerald Corwin, a consulting engineer, and Richard Carr, a former employee of Morton, both testified as experts that Morton airbags are designed to fully inflate within 50 milliseconds, as required by federal law. Additionally, the plaintiff and defense experts each testified that it was physically impossible for Mrs. Gillespie to reach the "knock-out zone," i.e., come within three to four inches of the steering

---

3. During voir dire Dr. Renfroe admitted the following: he had never written about airbag module inflators, never taught courses relating to airbags, knew nothing regarding testing and conducting testing on airbags, never worked on airbags or their components, never studied airbag characteristics, and had only observed one airbag deploy.

4. He indicated that the Gillespie vehicle was equipped with rolamite sensors as opposed to the ball and tube type.

5. Dr. Renfroe did testify about the combustible materials that comprise the pyrotechnic charges which deploy the airbag, specifically the zirconium charge and boron potassium nitrate. His testimony complemented the more thorough testimony of Richard Carr, a former employee of Morton. He testified about the three explosions that occur before an airbag can deploy. He discussed how a zirconium charge sets off a boron potassium nitrate, which in turn ignites a sodium azide based gas. The sodium azide gas then releases a nitrogen gas, which when heated inflates the airbag.

wheel, within 50 milliseconds.[6] Based on his extensive engineering and computer background, Dr. Renfroe conducted a computer program called a mathematical dynamic modeling reconstruction (MADY-MO). The testimony showed that MADY-MOs are widely used to illustrate what happens to occupants during vehicular collisions. This modeling indicated that the only way Mrs. Gillespie could reach the "knock-out zone" from her seated position was if the airbag did not deploy within the 50 milliseconds as it was designed, but rather was delayed until the passage of approximately 120 milliseconds. We conclude that based on Dr. Renfroe's education and experience, he was qualified to give expert testimony to these aspects of airbag deployment and delayed deployment as it affected Mrs. Gillespie's movement. The trial court did not abuse its discretion in finding Dr. Renfroe qualified as an expert.

■■■■ Morton also attacks both the legal and factual sufficiency of the evidence to support the trial court's findings that the airbag malfunctioned and that the alleged delay in deployment of the airbag was a producing cause of Mrs. Gillespie's injuries. Findings of fact in a bench trial have the same force and dignity as a jury verdict and are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). When both legal and factual sufficiency grounds are raised, we review the legal sufficiency point first to determine whether there is any probative evidence to support the jury's verdict. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). The traditional legal sufficiency or no-evidence test requires us to consider only the evidence favorable to the verdict, disregard all evi-

dence and inferences to the contrary, and determine whether any probative evidence exists to support the verdict. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Additionally, in considering all the evidence in the light most favorable to the prevailing party, every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors,* 960 S.W.2d 41 (Tex.1998) (citing *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970)). If there is more than a scintilla of evidence to support the finding, a no-evidence challenge fails. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

■■■■ Under Texas law, a plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 434 (Tex.1997); *see Ford Motor Co. v. Pool,* 688 S.W.2d 879, 881 (Tex.App.—Texarkana 1985), *rev'd in part on other grounds,* 715 S.W.2d 629 (Tex.1986); *see also Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377–78 (Tex.1984); *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732–33 (Tex.1984); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630, 632 (Tex.1969). In a similar airbag malfunction case, we held that where a plaintiff identifies a specific sealed mechanism that did not function as it was designed, and there was no evidence of tampering, he may offer evidence of the product's malfunction as circumstantial proof of the defect if he has no specific evidence of a design or manufacturing defect. *Sipes v. General Motors Corp.,* 946 S.W.2d 143, 155 (Tex.App.—Texarkana 1997, writ denied); *see also General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 349–50 (Tex.1977). We

---

**6.** The "knock-out zone," also known as the "non-encroachment zone," is the three to four inch area from the steering wheel where most airbag-related injuries occur because of the person's proximity to the airbag as it deploys at approximately 200 mph.

further held that the testimony of a product's user or operator about the circumstances of the event complained of is sufficient to establish the product's alleged malfunction. *Sipes v. General Motors Corp.*, 946 S.W.2d at 155; *see Garrett v. Nobles*, 102 Idaho 369, 630 P.2d 656 (1981); *Wernimont v. Int'l Harvester Corp.*, 309 N.W.2d 137 (Iowa Ct.App.1981).

The combined testimony of Mrs. Gillespie and Dr. Renfroe alone provides more than a scintilla of evidence to support the finding that the airbag did not deploy within the 50 milliseconds for which it was designed and that a delay in deployment of between 60 to 70 additional milliseconds constituted a manufacturing defect. As discussed previously, experts on both sides of this issue contend that if Mrs. Gillespie was seated as she testified, it would have been physically impossible for her to reach the "knock-out" zone from her seated position within 50 milliseconds. Consequently, based on research conducted by Dr. Renfroe, a delay of between 60 and 70 milliseconds in the airbag's deployment would allow Mrs. Gillespie's face to come within the knock-out zone-three to four inches from the steering wheel—and place her in a position to sustain the extensive facial injuries she suffered. Morton argues that this evidence is nothing more than inference, but even if that is true, in a no-evidence challenge we are required to indulge all reasonable inferences in Mrs. Gillespie's favor. Moreover, considering that Mrs. Gillespie wore prescription eyeglasses that were not damaged by the deployment, and the testimony of Dr. Renfroe that during the delay in deployment, Mrs. Gillespie was thrust forward with enough force to knock her glasses off, illustrates that the more than double delay in deployment was a producing cause of Mrs. Gillespie's injuries. This overcomes the contention advanced by Morton that

Mrs. Gillespie was voluntarily out of position.[7] Morton also contended that because Mrs. Gillespie's injuries were centered at the right side of her face, she must have been out of position near the steering wheel. Dr. Renfroe, however, testified that his calculations showed that the point of impact of the truck on her vehicle caused her head to turn to the left and expose the right side of her head to the airbag. Accordingly, there is some evidence to support the trial court's findings.

■■■■■ The standard for a factual sufficiency review requires us to review all the evidence, both favorable and unfavorable to the jury's verdict, and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Although we are required to review all the evidence, we may not interfere with the fact finder's resolution of conflicts in the evidence. *See America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 628–29 (Tex.App.—San Antonio 1996, writ denied); *Lawson–Avila Constr., Inc. v. Stoutamire*, 791 S.W.2d 584, 594 (Tex.App.—San Antonio 1990, writ denied). Where conflicting evidence is presented, the fact finder's determination of such matters is generally considered to be conclusive. *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947).

■■■■ Morton contends there is insufficient evidence to support either the court's finding that the airbag malfunctioned or that the delayed deployment was a producing cause of Mrs. Gillespie's injuries. We disagree. The evidence demonstrates that the pyrotechnic charges that bring about the deployment of an airbag are not entirely predictable and may be adversely

---

7. Morton alleges that Mrs. Gillespie was not seated normally, as she testified, but rather that she was bent down, voluntarily placing her face in close proximity to the steering wheel and airbag. However, Morton's own expert, Gerald Corwin, testified that Mrs. Gillespie's eyeglasses should have been smashed by the airbag if she was voluntarily out of position. This substantiates the testimony of Dr. Renfroe.

affected by debris, moisture, and humidity. Additionally, the record indicates that although the electronic sensing devices could have played a role in the delay in deployment, extensive testing of the sensors was done and they were found to be functioning properly.[8] Therefore, Dr. Renfroe was able to eliminate the sensing system from contributing to the airbag's delayed deployment. Additionally, the occupant restraint system, commonly known as seatbelts, showed signs of stress and load in the upper, shoulder area. Mrs. Gillespie sustained some bruising from the seatbelt, and the belt itself had some blood on it. These facts indicate that the restraint system was fully operational. Indeed, if Mrs. Gillespie's testimony about her position at the time of impact is believed, a conclusion that there was a delay in the airbag's deployment is almost compelled. The trial court was entitled to believe Mrs. Gillespie's testimony. Those circumstances, especially the impossibility for Mrs. Gillespie to reach the "knock-out zone" within 50 milliseconds, are more than sufficient for the trial court to find that the airbag malfunctioned.

■ Morton also attacks the court's findings on the basis that the conflicting inferences that may be drawn from the circumstantial evidence in this case are equally probative of different occurrences. Morton says that in such a situation, the equal inference rule requires that all inferences be disregarded. This is a mischaracterization of the equal inference rule. That rule applies only where the circumstantial evidence supporting the inferences is so slight that any plausible inference is only a guess, and thus amounts to no evidence at all. If circumstantial evidence will support more than one reasonable inference, it is for the trier of fact to decide which is more reasonable, subject only to a factual sufficiency review. *See Lozano v. Lozano,* No. 99–0121, 2000 WL 33216152, 44 Tex.Sup.Ct. J. 499, 503–04, 2001 Tex.

LEXIS 17, at *54–57 (Mar. 8, 2001) (Phillips, C.J., dissenting and concurring).

■ There is also ample evidence that the delayed deployment was a producing cause of Mrs. Gillespie's injuries. Producing cause is defined as an efficient, exciting, contributing cause which, in a natural sequence, produced the injuries complained of. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex. 1995); *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). If, as Morton contends, Mrs. Gillespie was voluntarily out of position, i.e., bent forward with her face close to the steering wheel and airbag, the experts agreed that her prescription eyeglasses would have shattered and would probably have been embedded in her face. By excluding the possibility that Mrs. Gillespie was to blame for the facial injuries she suffered, and in light of the testimony that if the airbag had deployed within 50 milliseconds, Mrs. Gillespie would not have suffered such extensive injuries, there is sufficient evidence that the more than double delay in deployment of the airbag constituted a producing cause of Mrs. Gillespie's injuries.

For the reasons stated, we affirm the judgment of the trial court.

---

**8.** All the experts agreed that after an airbag has deployed, it is impossible to test the inflating mechanism to determine if it malfunctioned.