Affirmed and Memorandum Opinion filed September 12, 2006








Affirmed and Memorandum Opinion filed September 12, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00769-CV

____________

 

BERRY DUNBAR BOWEN, Appellant

 

V.

 

HAL G. KUNTZ, Appellee

 



 

On Appeal from the 311th
District Court

Harris County, Texas

Trial Court Cause No. 1998-38475A

 



 

M E M O R A N D U M   O P I N I O N








Berry Dunbar Bowen sued Hal G. Kuntz for breach of contract
as a third-party beneficiary.  Bowen is an attorney who, along with several
other attorneys, represented Kuntz=s ex-wife in her
divorce from Kuntz.  An agreement incident to the divorce assigned
responsibility for half of any remaining attorney=s fees to Kuntz. 
In the current lawsuit, Bowen alleges that he is a third-party beneficiary
under the agreement and that Kuntz failed to pay the fees owed.  After a bench
trial, the trial court found that the evidence was factually insufficient to
prove that Kuntz owed any amount to Bowen.  On appeal, Bowen attacks the legal
and factual sufficiency of the evidence to support the trial court=s finding.  We
affirm.

Background

When Hal Kuntz and Vesta Kuntz (now Vesta Frommer)
divorced, they signed an agreement incident to divorce in which, among other
things, they divided their assets and liabilities.  Within this document, they
each agreed to be responsible for one-half of any remaining amounts owed to
their attorneys and experts for work done prior to the date of divorce. 
Specifically, the agreement contains three paragraphs discussing the division
of attorneys= and experts= fees.  The first
paragraph below appears as paragraph 8 in the main body of the agreement.  The
second paragraph below appears twice in the document, once on the schedule of
liabilities assigned to Kuntz and once on the schedule of liabilities assigned
to Frommer.

As part of the division of the parties [sic] estate,
and for services rendered in connection with conservatorship and support of the
child, each party will be responsible for 50% of any attorney=s expenses and expert fees
remaining unpaid as a result of legal representation in this case.  Hal Kuntz
will advance $10,000.00 to Richard W. Burns for attorney=s fees on or before the date of
divorce.  All fees and expenses incurred after the date of divorce shall be the
responsibility of the person incurring such expense.  Husband may pay Wife=s predivorce fees and deduct that
amount from her share of Royalties that Husband receives for her after June 30,
1999.

 

. . . .

 








50% of the balance of the fees and
expenses related to this divorce, including but not limited to amounts owed to
a) Fullenweider & Associates, b) Ryan, Miley & Thompson, c) Tom Oldham
and any other experts retained by him, as well as Richard W. Burns, Berry Bowan
[sic] and any other experts retained by Vesta Kuntz.  The parties will be
credited for the $10,000 payable to Richard W. Burns on June 29, 1999.[1]

After the divorce became final, Frommer filed an
enforcement action against Kuntz in which Bowen intervened against both of them
for allegedly past-due fees.  The intervention was subsequently severed and
tried separately.  Bowen settled with Frommer prior to trial for $6,500.  At
trial, the main issue was whether Kuntz had in fact paid his share of Bowen=s fees.  Kuntz
urged that all of the professional fees had been paid to Frommer=s lead counsel,
Richard Burns, for distribution to the other professionals working for Frommer
in the case (including attorneys and experts).  Kuntz at one point had
impleaded Burns but then nonsuited the action when Burns reportedly died prior
to trial.  Neither Kuntz nor Bowen impleaded Burns= estate.  Bowen
asserted at trial that the fees should have been paid directly to him pursuant
to the agreement and that he should not be held responsible for any overpayment
to Burns.








Bowen testified that in March 1999, Frommer hired him as an
attorney regarding oil and gas matters pertinent to her ongoing divorce proceedings. 
At the time, Frommer was represented by Robert Piro.  Bowen stated that Frommer
gave him a $10,000 retainer.  He admitted that there was no written contract
between them.  He further acknowledged that except for the initial retainer
payment, all of his invoices were submitted to Frommer in care of Richard
Burns, who substituted for Piro as lead counsel.  Bowen also acknowledged that
Frommer paid for his bills through Burns, and that Burns sublet office space
from him, shared his secretary, and referred business to him.[2] 
He denied, however, that he and Burns were partners.  Bowen emphasized that his
relationship with Frommer was direct and that he did not bill through Burns but
only submitted his bills in care of Burns as a matter of convenience.  Bowen
agreed that his bills went to Burns and that at times payment funneled back
through Burns.  Bowen said that he was aware of correspondence going between
Burns and Donn Fullenweider, the attorney representing Kuntz, regarding the
payment of fees (including Bowen=s fees).  Bowen
also said that he informed Burns that he had not been paid.  However, Bowen
said that he did not recall asking Burns for an accounting, although it would
not surprise him to learn that he had asked for one.  Bowen contended that at
the time of divorce, he was owed $29,892.75 in outstanding fees and that under
the terms of the agreement incident to divorce, Kuntz owed half of this amount,
or $14,946.37.  He further asserted that the only payment made after the date
of divorce was $31,554.65, which covered all of the professionals who worked on
the case for Frommer except for Bowen and one other.  In support of this
contention, Bowen pointed to letters sent by Burns to Fullenweider, in which
Burns listed specific amounts due to each professional and the amounts that Burns
had paid to the professionals from prior payments by Kuntz.  After Bowen
personally contacted Fullenweider and Frommer=s new attorney,
Tom Conner, in December 2000 and asked for payment, Conner responded that because
all of the fees had been paid to Burns, Bowen should seek his fees from Burns. 
Bowen admitted that after receiving this letter he did not then ask Burns for
an accounting.








Frommer acknowledged that she initially met with Bowen when
Piro was still her lead attorney and that she paid Bowen a $10,000 retainer. 
However, when Burns became lead counsel, the $2,000 remaining balance on the
retainer was transferred to Burns, and they agreed that she would pay Burns and
Burns would pay the other professionals working on the case.  Indeed, she
stated that after she made the first payment directly to Bowen, all subsequent
payments went through Burns.  She indicated that after Burns took over as lead
counsel, Bowen was to work for Burns.  She said that Burns informed her that
the $31,554.65 payment was final for attorney=s fees.  She
acknowledged that she subsequently saw a letter from Burns stating that Bowen
had not been paid but understood that Burns was to then pay Bowen.  Lastly, she
stated that she does not believe that Bowen is owed any additional funds from
her or Kuntz.

Hal Kuntz testified that he had no independent way of
knowing whether Bowen did the work for which he billed or whether he was paid. 
Kuntz said that he received no demand from Frommer that he pay Bowen anything,
and he believes that Bowen was paid all that he was due.  Kuntz further
asserted that he relied upon Frommer, Fullenweider (his attorney at the time),
and Beverly Ryan (a CPA asked to reconcile the invoices and payments) as to
whether all necessary payments had been made.

Donn Fullenweider testified that he represented Hal Kuntz
in his divorce and the immediate aftermath.  He stated that Burns was Frommer=s lead counsel in
the divorce and that he (Fullenweider) discussed payment of fees exclusively
with Burns through August 1999.  Fullenweider said that he did not hear from
Bowen regarding fees until December 21, 1999.  He believed that Burns was in
charge of receiving and distributing money to the other attorneys representing
Frommer.  He said that he was never advised to pay anyone other than Burns and
that he received no instructions from Frommer to pay any additional amounts after
the last payment was made.  He acknowledged that there appeared to be a $29,000
overpayment to Burns.  He thought, however, that all required payments had been
made.  He felt that Burns= team=s handling of fees
was very inconsistent and very confused.  He said that Beverly Ryan was hired
to reconcile the invoices and payments.








Beverly Ryan, a Certified Public Account, testified that
she reviewed the relevant billing and payment documents to determine whether
any amounts could still be owed to Frommer=s attorneys.  She
prepared a spreadsheet, two versions of which were admitted into evidence,
detailing the charges and payments.  She stated that Kuntz paid a total of
about $181,000 in fees to Frommer=s attorneys. 
Although she did not feel that she had all of the pieces to the puzzle, she
concluded that the maximum amount that could still be owed was $2,711.25.  She
also concluded, however, that Kuntz did not owe anything specifically to
Bowen.  She explained that records showed that payments did go between Burns
and Bowen at times and that Burns generally indicated in subsequent letters how
he distributed the money received from Kuntz.  However, Burns never described
how he distributed a $25,000 payment that he received.  She said that she
believes Burns was overpaid, but she did not know whether Burns may have been
applying payments to fees incurred after the divorce.[3] 
She ultimately concluded that Kuntz and Frommer paid all of Bowen=s invoices through
Burns, even though Bowen may not have received the money from Burns.

The documentary evidence admitted at trial included Ryan=s spreadsheets;
Bowen=s invoice; various
cancelled checks from Kuntz to Frommer, Burns, and Piro; and numerous
correspondence between the parties and attorneys.  From these documents, it can
be gathered that Bowen gave his bills to Burns and Burns forwarded them along
with those of Burns and other professionals to Kuntz or Fullenweider for
payment.  In his letters, Burns sometimes included statements showing how prior
payments had been distributed among the professionals working for Frommer. 
Later letters showed that the largest unpaid balance was owing to Bowen.  There
is no explanation in the record as to why Burns paid himself and other
professionals prior to or instead of paying Bowen.








The trial court entered extensive findings of fact and
conclusions of law.  The findings of fact included that: (1) Burns operated as
lead counsel for Frommer, and Bowen and the other professionals worked at Burns= direction; (2)
Burns received the payments for professional fees and disbursed the money to
the various professionals working for Frommer; (3) Bowen submitted his bills to
Burns rather than to Frommer; (4) Bowen and Frommer never executed an
employment contract; (5) Burns represented to Kuntz that he (Burns) would pay
all of Frommer=s attorneys and experts out of the funds paid directly
to him; (6) Frommer understood that all her attorneys= fees had been
paid in full through Burns and that Kuntz did not owe any fees to Bowen; (7)
Kuntz paid in full all of the attorney=s fees incurred by
Frommer that were presented to him; (8) the accounting by the ABurns team@ was ambiguous at
best; and (9) Bowen never requested an accounting from Burns regarding fees
Burns received and disbursed to the ABurns team.@  The conclusions
of law included that (1) there was no contractual relationship between Frommer
and Bowen regarding payment of his fees; and (2) the evidence was factually
insufficient to establish that Kuntz owed any amount to Bowen for unpaid fees. 
The trial court denied and dismissed Bowen=s intervention.

Discussion

On appeal, Bowen attacks the legal and factual sufficiency
of the evidence to support the trial court=s finding that
Kuntz paid in full all of the attorney=s fees incurred by
Frommer that were presented to him.  He also attacks the trial court=s conclusion that
the evidence was factually insufficient to determine whether Kuntz owed any
amount to Bowen for unpaid fees.  In considering Bowen=s challenges, we
utilize the normal standards of review.  See City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005) (discussing standards for legal sufficiency
review); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986)
(discussing standards for factual sufficiency review).[4]








Bowen contends that A[n]o payment
intended to pay Bowen=s final invoice was undertaken.@  He further
likens Kuntz=s positionCthat payments to
Burns extinguished the debt to BowenCto saying that Abecause I overpaid
the electric bill I don=t have to pay the Visa card.@  There was
considerable evidence, however, that (1) the established procedure was for
Bowen=s fees to be paid
through Burns, and (2) the fees were so paid.  Regarding the first point, that
Bowen=s fees were to be
paid through Burns, the evidence included that:  Bowen submitted his bills
through Burns to both Frommer and Kuntz; Bowen had previously accepted payment
through Burns; Burns had consistently represented that payments were to be made
to him and that he was to then distribute to the other professionals working
for Frommer; Burns had in fact received and distributed funds for the other
professionals; and Frommer understood that Bowen was working for Burns and that
all payments to Bowen were to be made through Burns.  Regarding the second
point, that Bowen=s fees were indeed fully paid through
Burns, the primary support can be found in the testimony of Ryan, the CPA.  She
concluded, upon reviewing the bills and payments, that all of Bowen=s fees had been
paid.  Also supporting this point are the documentary evidence, including the
bills, payments, correspondence, and Ryan=s spreadsheets. 
Further, Frommer, Kuntz, and Fullenweider each testified to their belief that
all of Bowen=s fees had been paid.  Consequently, the trial court
could have rightfully concluded that Kuntz properly paid to Burns all that was
due to Bowen.[5]








Bowen attempts to draw a distinction between payments made
prior to execution of the agreement incident to divorce from those made after
execution of the agreement.  Although he does not explicitly state so, the
implication appears to be that after the agreement was signed, payments should
no longer have gone through Burns as they had before the agreement was signed. 
However, Bowen provides no explanation for this putative alternate procedure,
and we discern none.[6] 
To the contrary, Bowen acknowledged that even after the agreement, he still
submitted his bills Ain care of@ Burns and that he
was aware of the correspondence between Burns and Fullenweider in which Burns
was listing and demanding payment of Bowen=s fees along with
others.  The trial court could have therefore rightfully concluded that the
established procedure of paying Bowen and the other professionals through Burns
continued even after the agreement was signed.  The evidence was legally and
factually sufficient to support the trial court=s findings.

We affirm the trial court=s order.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 12 , 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.









[1]  Additionally, boilerplate language in paragraph 3.4
of the agreement states:

 

The husband, Hal G. Kuntz, will pay, as a part of the
division of the estate of the parties, and will indemnify and hold Wife, Vesta
L. Kuntz, and her property harmless from any failure to so discharge, the items
in Schedule C, attached to and made a part of this agreement.

 

ASchedule C@ is
the schedule of
liabilities assigned to Kuntz.  Paragraph 3.5 contains similar language stating
that Frommer will pay and will indemnify Kuntz regarding the items on her
schedule of liabilities.





[2]  In his brief, Bowen states that Burns referred
Frommer to him even before Burns was officially involved in the case; however,
Bowen does not provide a record cite for this assertion.





[3]  The agreement incident to divorce expressly made
Kuntz liable only for half of Frommer=s
attorneys= fees incurred on or before the date of divorce.  Thus,
it would have been improper for Burns to apply payments from Kuntz to fees
incurred post-divorce.  The evidence suggests, however, that Kuntz sometimes
paid his portion of Frommer=s attorneys= fees to Frommer instead of directly to Burns. 
Frommer would then pay Burns for distribution to the other professionals.  It
is therefore possible that Burns applied the payments from Frommer to his
post-divorce fees before he applied them to Bowen=s outstanding fees.  However, there does not appear to be any direct
evidence that this is what occurred, nor would it change the outcome of our
analysis.





[4]  Bowen does not identify any of his arguments as
attacking specifically the legal or factual sufficiency of the evidence. 
Consequently, we discuss all of his arguments together but apply the standards
distinctly.





[5]  Bowen=s
electric bill/Visa card analogy thus fails because the evidence demonstrates
that a procedure was established for paying Bowen through Burns.





[6]  Bowen also argues that Kuntz was liable for payment
of his fees because he was an intended third-party beneficiary of the agreement
and the fees were listed in Kuntz=s
schedule of liabilities.  This argument fails because it does not refute the
conclusion that Bowen=s fees were properly and fully paid through Burns.