**Manuel Ventura HERNANDEZ, Appellant,**

**v.**

**Jenaro J. BORJAS, Guardian of the Estates and Persons of Frank Loredo, III, and Juanita Teresa Loredo, Appellee.**

**No. 2–86–178–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 19, 1987.

Robert J. Wilson & Associates, Inc. and Jenifer O. Lawing, Burleson, for appellant.

Holt & Phillips, P.C. and Ronnie Phillips, Denton, for appellee.

Before FARRIS, KELTNER and LATTIMORE, JJ.

## OPINION

KELTNER, Justice.

This is an appeal from an order denying an application for removal of a court appointed guardian for the Loredo minors.

We affirm.

The four Loredo minors were orphaned with the death of their last surviving parent and mother, Francisca Loredo. In her will, the mother provided that her brother, Jenaro Borjas, would serve as guardian of the estates of the children, and her brother's wife, Berlinda Borjas, would serve as guardian of the persons of the children. However, Berlinda declined to serve and Jenaro filed an application for guardianship. He was appointed as the guardian of the persons and estates of the four Loredo children.

Additionally, the court appointed Jenaro as independent executor of the estate of Francisca Loredo. The will directed the executor to divide the proceeds from the estate among the four children when they reached their majority. By the time of the facts giving rise to this action, two children had reached majority and were given between $6,000 and $7,000 each from the estate.

Approximately six years after the appointment of Jenaro as guardian, the two Loredo children who had not reached majority, Frank and Teresa, took residence with Manual Ventura Hernandez, who is the appellant in this action. Shortly after taking residence with Hernandez, they filed a "Selection of Guardian" requesting that Hernandez be appointed as their guardian. This document was filed pursuant to TEX. PROB.CODE ANN. sec. 118(b) (Vernon 1980). Section 118(b) provides that upon obtaining the age of fourteen years, a minor may select another guardian of his person or estate if the court finds that the minor's selected guardian is suitable and competent. At the time of making the selection, Frank was seventeen and Teresa was fifteen.

At the same time, Hernandez filed an application for removal of Jenaro as guardian of Frank and Teresa on the grounds that Jenaro had misapplied the minors' property. Specifically, Hernandez alleged that Jenaro had forced the minors from his home and had not paid them or Hernandez any income from the estate during that absence.

The court conducted a hearing on the application for removal and entered temporary orders, suspending Jenaro's letters of guardianship and appointing Hernandez as temporary guardian. Approximately three weeks later, the court heard the application for removal and found that no cause existed for Jenaro's removal as guardian. As a result, the court ordered that Jenaro resume his duties as guardian of the minors.

Hernandez appeals the court's order and brings two points of error. In his first point of error, Hernandez contends that the court erred in failing to appoint him guardian pursuant to the "Selection of Guardian" made pursuant to section 118(b).

■ Unfortunately, this contention is not properly before us on appeal. As we previously noted, the application for removal was the only matter heard before the court. It was filed in a separate document as was the "Selection of Guardian." A hearing was only requested on the application for removal. In fact, the trial court appeared to be concerned about whether both matters were set. At the hearing, the court asked if there were any other matters to be heard and was told by Hernandez that none were scheduled.

■ An "Application for Removal" and a "Selection of Guardian" under section 118(b) are different actions, although they may result in the same remedy. In an application for removal, the movant must prove that the current guardian has misapplied, embezzled or removed funds or that he is about to do same; or fails to return any account which he is required to do by law; or fails to obey any order of the court; or is guilty of gross misconduct or mismanagement; or is incompetent; or fails to make a final settlement within three years after the grant of his letters; or cruelly treats a ward or fails to maintain a ward as liberally as the condition of the estate permits. TEX.PROB.CODE ANN. sec. 222 (Vernon 1980). On the other hand, the only findings necessary for the court to approve a "Selection of Guardian" of minors over the age of fourteen is a selection made by the ward, the person selected is suitable, and the person selected is competent.

TEX.PROB.CODE ANN. sec. 118 (Vernon 1980).

In the instant case, it is obvious from its order and the testimony at the hearing that the trial court only considered the "Application for Removal" and did not consider the "Selection of Guardian" filed by the minors. As a result, that matter is still pending in the trial court and is not appealed to this court.

In his second point of error, Hernandez contends that the trial court erred in failing to grant the "Application for Removal" and revoke the letters of guardianship issued to Jenaro. Specifically, Hernandez contends the evidence presented at the hearing on the "Application for Removal" established that Jenaro misapplied the property of the minors, applied some funds to his own use, allowed assets to be seized by other individuals, and treated the minors cruelly. We must note that the "Application for Removal" simply states that the minors were treated cruelly, ordered to leave the residence, and were not supported after they left. The "Application for Removal" does not contain any allegations regarding Jenaro's alleged use of estate funds for his own benefit.

No findings of fact or conclusions of law are included in the record.

■ In a trial to the court where no findings of fact or conclusions of law are filed or requested, the judgment of the trial court implies all necessary findings of fact in support thereof. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980) (per curiam). An appellant may challenge these implied findings by raising both legal and factual sufficiency of the evidence points, and where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Burnett*, 610 S.W.2d at 736.

Hernandez does not indicate whether his second point of error is directed toward the legal sufficiency or factual sufficiency of the evidence. Fortunately, our Supreme

Court has recently relaxed briefing requirements to these points of error. As a result, the Supreme Court directs us to consider evidence points that are not conventionally labeled, directing that "[w]e look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex.1986).

In following the mandate of the Supreme Court, we quote from the appellant's brief:

### POINT OF ERROR NUMBER TWO

THE HONORABLE TRIAL JUDGE ERRED IN FAILING TO REVOKE THE LETTERS OF GUARDIANSHIP OF THE PERSONS AND ESTATES OF FRANK LOREDO, III, AND JUANITA TERESA LOREDO ISSUED TO JENARO J. BORJAS....

> Sufficient grounds exist to support the belief that the appellee had misapplied part of the property committed to his care.
> Sufficient grounds existed to show that appellee cruelly treated the wards entrusted to his care.
> Sufficient grounds existed to show that appellee failed to obey a proper order of the court having jurisdiction with respect to the performance of his duties.

Utilizing the methodology of *Pool, id.,* we interpret the point to be a complaint of factual insufficiency, i.e., the implied findings of the court were against the great weight and preponderance of the evidence.

In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as the evidence that tends to disprove its existence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

In reviewing the evidence, there is evidence to support Hernandez' position

and evidence to support Jenaro's position. Hernandez' brief quotes only the evidence favorable to him and ignores the evidence favorable to Jenaro. However, we have reviewed the statement of facts in detail.

As stated in Hernandez' brief, there is evidence that Jenaro has used some of the estate money for his personal benefit. However, there is also ample evidence that Jenaro has deposited his own funds into the estate account, has paid pre-death debts of the minors' natural mother out of his personal money, and has used his own money to support all four of the children. Additionally, he has preserved the estate so a large principal exists for distribution to the children when they reach majorty. In this regard, he has paid the two children who have reached majority their share of the funds from their mother's estate. Additionally, he made arrangements for those children to live with him past their eighteenth birthdays.

Hernandez claims that Jenaro misapplied some of the money committed to his care and even allowed some of the assets to be seized by other individuals. There is some evidence to support these contentions. However, Hernandez' contentions ignore testimony that the property which was allegedly seized, consisted of personal effects of the deceased, which were put into the care of other family members pursuant to the deceased's wishes. Additionally, that property still exists and is being held by those individuals for the benefit of the minors. The evidence disclosed that none of the minors had yet asked for these personal possessions.

Hernandez also urges that Jenaro misapplied money from the sale of the deceased's house and violated court orders in making payments from the deceased's estate on his own house. There is some evidence to support this position. However, there is other evidence which explains Jenaro's conduct. Jenaro was forced to expend much time and effort in repairing the deceased's house so it could be sold. He was reimbursed for these repairs from the proceeds of the sale of the house. Additionally, a court order allowed him to apply certain

proceeds from the sale to the purchase of a new house. Jenaro was allowed, by court order, to make one-half of his house payments out of the estate accounts. Hernandez also urges that Jenaro testified that at times he paid his entire $830.28 mortgage payment out of the estate. This is true. However, Jenaro indicated that during some periods of time, he alternated paying the full amount of the mortgage payment out of the estate one month and his personal account the next month.

Hernandez also argues there is evidence to show that Jenaro treated the wards cruelly. The evidence demonstrates that each of the wards testified that their residence with Jenaro was sometimes stressful due to the additional demands their presence put on the household. However, when asked for specific examples of cruel treatment, the evidence is conflicting. The two remaining wards stated at times they were treated differently from Jenaro's children; but also testified that at other times, they were treated in the same manner. There was some testimony that Jenaro slapped the wards. However, the testimony on this issue is conflicting. On cross-examination, each of the children admitted that the "slapping instances" occurred in Jenaro's efforts to discipline the children.

Hernandez also claims that the children were forced to leave the Borjas home. There is evidence to support this. However, at the time the children were forced to leave, Jenaro's wife forced him to leave as well. The court heard testimony that the friction between Jenaro and his wife had subsided and the environment in the household was equalized through Jenaro and his wife attending counseling sessions.

In conclusion, the court listened to extensive testimony regarding Hernandez' contentions. In fact, the court listened patiently to often repetitious testimony and even questioned witnesses more thoroughly than the lawyers in order to get the entire story. After hearing all the evidence, the court announced its judgment in open court. The trial judge stated for the record:

> It is the opinion of the Court that Jenaro J. Borjas has done an exemplary job over the years in caring for the persons and the estates of these children. There is now $12,000.00 on deposit for these children when they reach the age of 18 years that he has preserved at great personal sacrifice. Also, there is an equity in the home that he and these children occupy; and, although there has been discord in the family, I think these matters are such now that it would be very unwise for this Court, after the proven example of what Mr. Borjas can do and has done, to just peremptorily remove him and place these children with somebody else; and, that Petition for the Court to do so is respectfully denied.

As a result, we overrule the second point of error as there is ample evidence in the record to support the trial court's implied findings.

We have overruled both of Hernandez' points of error. We affirm the judgment of the trial court.