Affirmed and Memorandum Opinion filed October 5, 2006








Affirmed and Memorandum Opinion filed October 5, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00810-CV

_______________

 

SMART DEALER PARTS, L.C., Appellant

 

V.

 

MARKS TRANSPORT, INC., D/B/A CHAMPION TOYOTA F/K/A JAY
MARKS TOYOTA, Appellee

                                                                                                                                               


On Appeal from the 125TH
District Court

Harris County, Texas

Trial Court Cause No. 02-41600 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

In this
appeal, Smart Dealer Parts, L.C. (SDP) appeals a judgment in favor of Marks
Transport, Inc., d/b/a Champion Toyota f/k/a Jay Marks Toyota (Marks) on the
ground that the evidence is factually insufficient to support the jury=s finding that SDP was the first
party to breach the contract.  We affirm.

 

Factual and Procedural Background

Marks is
a large Toyota dealership, which purchases and sells automobile parts on a
daily basis.  Because of its unique parts requirements and its status as a
Toyota franchise, Marks purchases the majority of its parts from Gulf States
Toyota, the distributor for Toyota Motor Company in the Houston area.  As the
distributor, Gulf States could immediately deliver parts to Marks.  Marks and
other Toyota dealerships purchase a small portion of their automobile parts
from Agray market@ dealers.  Most gray market dealers
purchase parts at a discount overseas and resell those parts in the United
States.  Because of the nature of the gray market business, the inventory of
gray market dealers does not equal that of Gulf States Toyota.  In 1998, Marks
was purchasing most of its gray market parts from Trans World Services.  In
addition to purchasing parts from gray market dealers, Marks and other Toyota
dealerships would obtain large quantities of parts from Gulf States Toyota and
resell those parts at a discount to gray market dealers.  

In 1994,
Abdullah Hassan Ali formed SDP for the purpose of selling auto parts on the
gray market.  Dwayne Holliman worked as a salesperson for SDP.  Ali testified
that when Holliman began work at SDP, he signed an agreement not to compete
with SDP for a certain period of time following his termination.  SDP, however,
failed to produce a copy of the agreement at trial.  Holliman was terminated
from SDP and began working in the parts department at Marks.  In 1998, Ali
became concerned that Holliman was taking clients from SDP and threatened to
file a lawsuit against Marks.  At the time of the threatened lawsuit, Marks did
not do business with SDP on a regular basis, nor did SDP purchase parts from
Marks.  At that time, SDP purchased bulk parts orders from Fred Haas Toyota, a
competitor of Marks.








In an
effort to settle the disagreement, the parties entered into the contract at
issue in this case.  In early discussions about settlement, Ali requested that
Marks guarantee $120,000 in parts orders every month.  Because Marks was unable
to make such a guarantee, it rejected any monetary guarantee of parts orders. 
On December 17, 1998, SDP and Marks agreed to the following:

$                  
Beginning January
1, 1999 and subject to the terms and conditions of the agreement, Marks agreed
to offer SDP first opportunity to fill all daily, weekly, and monthly stock
orders, industrial orders, and export orders to the extent SDP could timely
fill the orders.

$                  
SDP agreed to
deliver all parts on or before the close of business on the next business day
following the order.  If the parts were not timely delivered, Marks reserved
the right to cancel the order.

$                  
SDP agreed to use
its best efforts to purchase parts from Marks.

$                  
Payment terms
were net thirty days.

Both parties testified
they considered the agreement to be favorable to them.  SDP would benefit by
diverting parts orders from its competitor, Trans World Services, and Marks
would benefit by diverting parts orders from its competitor, Fred Haas Toyota.

Beginning
January 1, 1999, Thomas Sowell, the parts manager for Marks, sent his daily
parts orders to SDP by fax or email.  Sowell requested that SDP inform Marks by
3:30 p.m. the day of the order whether SDP could fill any of the parts orders. 
Accordingly, Marks had time to order parts from Gulf States by 4:00 p.m. if SDP
was unable to fill any portion of the order.  Sowell testified that whatever
parts SDP reported it had in stock, Marks would order.  Sowell remembers that
he continued to send daily stock orders to SDP through the end of 1999 and
possibly into 2000.  Neither party kept a record of these daily orders.  The
only records produced at trial were invoices produced by SDP.  Sowell testified
that in January 1999, the first month of the contract, SDP was not able to fill
all Marks=s parts orders.  SDP frequently shipped incorrect or damaged parts. 
Further, SDP often did not fill the entire quantity ordered by Marks.  








Randy
Martin was employed by SDP from 1994 through 2001.  When the agreement was
initiated with Marks, it was his responsibility to administer it for SDP. 
Based on his conversations with Ali, Martin understood that Marks would give
SDP right of first refusal on all its parts orders in exchange for SDP=s promise to use its best efforts to
purchase parts from Marks.  Shortly after the agreement was signed, Martin
testified SDP had a large parts order it needed to fill.  Ali instructed Martin
to purchase the parts from Fred Haas Toyota, not Marks.  When Martin discussed
with Ali whether SDP should purchase the parts from Marks under the 1998
agreement, Ali told Martin he preferred to purchase parts from Fred Haas
because Haas did not require Ali to pay for the parts in a timely manner. 
Under Ali=s instruction, Martin sent the parts orders to Fred Haas first, then sent
the remainder to Marks.  Ali instructed Martin not to send parts orders to
Marks first.  Martin testified that after the agreement was signed, Marks
complied with the agreement by sending SDP its parts orders on a daily basis. 
Martin testified that the relationship between the parties deteriorated because
SDP did not have many parts in stock that were needed by Marks.  Martin further
testified that Sowell had valid complaints about order shortages and damaged
parts.  He agreed that SDP sent inaccurate shipments.

Sometime
after the first year of the agreement, Marks became frustrated with SDP=s performance and began diverting its
parts orders to other gray market dealers.  SDP filed this lawsuit alleging
Marks had breached the agreement.  Marks filed a counterclaim against SDP
alleging it had breached the contract before Marks stopped sending all its
orders to SDP.  The jury found that both parties breached the contract, that
SDP breached the contract first, and that neither party suffered damages as a
result of the breach.

Factual Sufficiency of the Evidence








In a
single issue, SDP contends the finding by the jury that SDP breached the
contract first is not supported by factually sufficient evidence or is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  In reviewing SDP=s factual-sufficiency challenge, we examine the entire
record, considering both the evidence in favor of, and contrary to, the
challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  GTE Mobilnet of S.
Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own judgment for that of the trier of fact,
even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).

The jury
found that both parties breached the contract, but that SDP breached the
contract first.  The contract required Marks to give SDP the first opportunity
to fill any parts orders and to pay for those parts within thirty days.  SDP
does not dispute that Marks timely paid its bills.  SDP, however, contends that
Marks did not give SDP first opportunity to fill its parts orders.  In exchange
for the first opportunity to fill Marks=s parts orders, SDP agreed to (1)
deliver the parts on or before the close of business the next day after the
parts were ordered, (2) use its best efforts to purchase parts from Marks, and
(3) pay Marks for purchased parts within thirty days of delivery.  








Having
reviewed the entire record, we find factually sufficient evidence to support
the jury=s finding that SDP first breached the
contract.  Thomas Sowell testified that Marks sent daily orders to SDP, giving
it first opportunity to fill the orders, for at least one year following the
signing of the contract.  SDP contends the evidence shows that Marks breached
the contract on January 4, 1999, the first business day of the contract term
because the first invoice for parts ordered by Marks is dated January 5, 1999. 
Sowell testified that the invoice was sent for parts ordered on January 4,
1999, the first business day of the contract term.  Therefore, the date of the
first invoice does not support SDP=s contention that Marks breached the
contract first.  Sowell further testified that he continued to send parts
orders to SDP, but became frustrated with SDP=s inability to fill parts orders
accurately and with undamaged parts.  Sowell also became frustrated with SDP=s failure to purchase parts from
Marks.  It was not until after at least a year of receiving inaccurate parts
orders and damaged parts and not receiving parts purchases from SDP that Sowell
began to divert parts orders to other gray market dealers.  Robert Martin, a
former SDP employee, testified that he does not remember Marks depriving SDP of
orders until after SDP failed to perform under the contract.

Martin
testified that during the first several months of the contract, SDP failed to
deliver all the parts that were ordered by Marks by the end of the next
business day.  Martin further testified that SDP intentionally diverted a large
parts order that could have been purchased from Marks to Fred Haas Toyota
because payment terms were more favorable at Fred Haas.  SDP presented evidence
that it expected to receive orders of parts totaling $120,000 per month from
Marks, and because it did not receive such high orders, Marks must not have
been giving SDP first opportunity to fill those orders.  The evidence at trial
reveals that Marks never agreed to provide $120,000 per month in parts orders
to SDP.  In fact, there was testimony that no dealership could produce that
level of parts orders with a gray market dealer.








SDP
further contends that an invoice from Star Toyota proves that Marks was not
giving SDP first opportunity to fill orders in January and February of 1999. 
At trial, SDP produced an invoice of a purchase of approximately $800,000 in
parts from its Saudi Arabian supplier, Star Toyota.  Kurt Carlson, an employee
of SDP, argued that the invoice proved that SDP had sufficient inventory in
January and February, 1999 to fill Marks=s parts orders.  Therefore, SDP
contends there is no merit to Marks=s claim that SDP was unable to fill
its parts orders.  During cross-examination of Carlson, Marks contested the
authenticity of the invoice from Star Toyota, pointing out discrepancies
between that invoice and other invoices from the same company.  Further,
neither party produced the actual parts orders sent by Marks to SDP because
those records were not retained by the parties.  Because there is no evidence of
the actual parts ordered, the Star Toyota invoice does not, by itself, prove
that Marks did not give SDP first opportunity to fill its orders.  Further, as
the trier of fact, the jury was entitled to judge the credibility of the
evidence and to determine the weight given to certain evidence.  GTE
Mobilnet, 61 S.W.3d at 615B16.  Having reviewed all of the evidence, both that in favor
of, and against, the jury=s finding, we find factually sufficient evidence to support
the jury=s finding that SDP first breached the
contract.  We further find the evidence in support of the jury=s finding is not so against the great
weight and preponderance of the evidence as to be manifestly unjust.  Appellant=s sole issue is overruled.

Accordingly,
the judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed October 5, 2006.

Panel consists of Justices Hudson,
Fowler, and Seymore.