# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00441-CV

**Kenneth Eddens, Appellant**

**v.**

**Melissa Nunan, Amanda Joyce Williams &
The Williams-Nunan Revocable Living Trust, Appellees**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-005924, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kenneth Eddens appeals from the trial court's judgment in his suit against Melissa Nunan, Amanda Joyce Williams, and the Williams Nunan Revocable Living Trust (the Trust). Eddens asserts that the trial court erred by (1) failing to render judgment against the Trust on his breach of contract claim and (2) failing to rule on certain of the claims asserted in his live pleadings. We will affirm.

### BACKGROUND

Eddens sued Nunan, Williams, and the Trust asserting various causes of action including fraud, negligent misrepresentation, breach of contract, quantum meruit, and promissory estoppel. The court held a two-day bench trial during which Eddens testified that, doing business as Eddens Property Management Company, he performed construction services at a

residence located at 2113 Singletree Lane in Austin. Eddens stated that the project, which was to remodel the residence, was identified and brought to his attention by Shawn Patton, an acquaintance of Eddens who was also involved in the Monarch Haven of Hope, an organization Eddens and Patton were affiliated with whose mission was to help veterans obtain housing. Eddens testified that his company could make money remodeling the home and "also get a home for a veteran" as part of that program. Patton introduced Eddens to Williams, who was living at the residence. Eddens testified that he was told that Williams and her wife, Nunan, were getting a divorce. In January 2017, Eddens met with Williams to discuss the possibility of working with her to remodel the house. According to Eddens, Williams told him that she wanted to bring the residence up to code, add some improvements, and sell it. Eddens recounted that Williams advised him that she was "having problems" with Nunan and that Nunan had been physically abusive to her. Williams told Eddens that, because of the family violence, a court had ordered that Nunan could not enter the residence. Williams showed Eddens court documents that she represented restricted Nunan's access to the residence and photographs of injuries to her that Williams stated were caused by Nunan.

Eddens stated that he was aware that Williams and Nunan were married and owned the property but was "unaware of the details involving their relationship." Eddens testified that he would normally require both members of a married couple to sign a contract to remodel a home they owned but that he believed he did not need to do that in this instance because of the "extenuating circumstances" Williams told him about. Eddens stated that he had no reason to disbelieve Williams when she informed him that the court had given her the right to handle the remodeling and sale of the marital home. Eddens further testified that he would not

2

have entered into a contract with Williams alone if she had not told him that the court had given her the "sole right to renovate the house."

In March 2017, Eddens and Williams executed a contract titled "General Contractor Contract Major Home Repairs or Remodeling" that outlined the work Williams wanted done at the residence. The contract identified Williams as "Homeowner" and was signed by Williams and Eddens. Eddens testified that the goal was to bring the house up to code to be able to sell it for the best price. He stated that it was also important for the residence to be code-compliant if a veteran were to purchase it because the "VA is very particular" about homes being code-compliant. Eddens testified that the contract between him and Williams gave him control over the actual sale of the property, which was important to ensure that a particular veteran who wanted to purchase the home was able to do so. Eddens testified that the contract with Williams gave him the right to "choose the real estate agent to orchestrate the sale."

In April 2017, Williams and Eddens executed a second document titled "Independent Contractor Final Cost Agreement" whereby Eddens agreed to furnish all the labor and materials for the job and Williams agreed to pay Eddens "as full payment $150,000 for doing the work." The Final Cost Agreement also provided that "[t]he entire amount of $150,000 is due upon the final sale of the residential home."

Eddens performed construction services at the residence from early March through the end of April when the court presiding over Williams and Nunan's divorce proceedings ordered the work to stop. Eddens testified that it was Williams who informed him of the court's order and that he was under the impression that it was only a temporary pause in the construction project. Eddens testified that, after that, Nunan met with him and informed him that she was going to be in charge of finishing the project and asked him for a list of items that

3

still needed to be done. Eddens stated that he prepared documents titled "Cost Summary for the Work that has Already Been Done" and "Cost Summary for Work Remaining" and gave them to Nunan but that Nunan never offered to pay him and did not allow him to finish work on the residence. Eddens testified that Nunan told him that Williams was "a big liar" and that she had never assaulted Williams. Eddens stated that "his own investigation" confirmed to him that Williams had lied to him and that he "was being duped big time."

Nunan also testified at trial. She stated that she and Williams had created the Trust in April 2006 and that the residence was put into the Trust. Williams and Nunan were the beneficiaries of the Trust and its only trustees. Nunan stated that she delivered a letter revoking the Trust to Williams in January 2017. The letter stated, in part "I have no choice but to file for divorce. The Trust is null and void." Nunan testified that this revocation was done pursuant to the terms of the Trust, which provided that either Willliams or Nunan had "the power and right to amend, modify or revoke" the Trust by "notice in writing delivered to the Trustee." The Trust also provided that such revocation "shall be effective immediately upon delivery" to the Trustee. Nunan testified that she had never given Williams power of attorney to enter into contracts on her behalf.

Finally, the court heard testimony from Shawn Patton, an associate of Eddens. Patton testified that she had introduced Eddens and Williams and that she helped with work on the residence and helped find volunteers to work on the project. Patton testified that Williams never said anything about splitting the proceeds from the sale of the residence with Nunan and that Williams told her that it "was up to her to take care of the house" and that it was important that the residence be sold. Williams did not appear at the trial.

4

After trial, the court signed a final order rendering judgment against Williams on Eddens's claims for breach of contract, promissory estoppel, and quantum meruit. The court awarded Eddens $231,200.00 on his claims against Williams, stating that "[t]his judgment is solely against Defendant Amanda Williams." The court order stated that neither Nunan nor the Trust were liable to Eddens for breach of contract, promissory estoppel, or quantum meruit and dismissed all claims against them. The order further stated that Nunan and the Trust were not jointly and severally liable with Williams for the judgment because "Williams acted alone in her individual capacity and in violation of court ordered injunctions." Thereafter, the court filed findings of fact and conclusions of law, and Eddens perfected this appeal.

In his second issue, which we will address first, Eddens asserts that the trial court erred by "failing to rule on [Eddens's] claims for Texas Uniform Fraudulent Transfer Act, Unjust Enrichment, Fraud and Negligent Misrepresentation." In his first issue, Eddens argues that the trial court's failure to find that the Trust was liable to him for breach of contract was "against the great weight and preponderance of the evidence." We construe this as a challenge to the factual sufficiency of the evidence supporting the trial court's determination that the Trust was not liable to Eddens for breach of contact. *See Dow Chem. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) ("When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.").

## DISCUSSION

On appeal, Eddens asserts that the trial court erred in failing to rule on three of his claims and that, consequently, we should abate the appeal and remand it to the trial court for

5

adjudication of these claims.  In the present case, the court held a two-day trial on the merits of Eddens's claims and rendered a judgment.  "[A]ny judgment following a conventional trial on the merits creates a presumption that the judgment is final for purposes of appeal."  *Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) (citing *North E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex. 1966)).  "A judgment following a conventional trial on the merits need not dispose of every party and claim for the *Aldridge* presumption of finality to apply."  *Id.* Unless a trial court orders a separate trial to resolve a specific issue, there is a presumption that the trial court's judgment disposes of all claims and issues in the case.  *See Aldridge*, 400 S.W.2d at 897-98.  "If there is any doubt as to the judgment's finality, then finality must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties."  *Vaughn*, 324 S.W.3d at 563 (internal quotations omitted).  Here, the judgment is titled "Final Order" and includes language stating that "the Court dismisses all claims against Defendants, Melissa Nunan and the Williams-Nunan Revocable Trust."  The trial court did not order a separate trial to resolve any of the claims Eddens asserted against Williams, Nunan, or the Trust.  Eddens treated the order as final by filing a request for findings of fact and conclusions of law in which he stated that "[t]he Court signed a Final Judgment in this matter on June 28, 2022" and by filing a notice of appeal.  There is nothing to indicate that the trial court did not intend to finally dispose of the entire case.  Thus, the trial court's judgment after a conventional trial on the merits is final for purposes of appeal. We overrule Eddens's second issue.

In his first issue, Eddens challenges the factual sufficiency of the evidence supporting the trial court's determination that the Trust is not liable to Eddens for breach of contract.  When a party attacks the factual sufficiency of an adverse finding on an issue on which

6

he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. We must consider and weigh all the evidence and can set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

In its findings of fact, the trial court found that Williams acted alone in her individual capacity when dealing with Eddens and, based on that finding, concluded that neither Nunan nor the Trust was liable to Eddens on any of his claims arising out of the contracts that Eddens and Williams executed or based on any of Williams's conduct regarding the remodeling project Eddens undertook at the residence. On appeal, Eddens challenges this finding, asserting that "a review of the undisputed facts makes it clear that Williams was acting in her Trustee capacity" when she executed a contract with Eddens. Eddens points to evidence that Nunan and Williams created the Trust in April 2006; that the residence was deeded to the Trust in May 2006; that both Williams and Nunan had power to act on the Trust's behalf; and that Williams signed the two contracts with Eddens in her stated capacity as "Homeowner" and "Owner" of the residence. Having reviewed this evidence, along with the other evidence presented at trial, we cannot conclude that the trial court's finding that Williams acted alone in her individual capacity is against the great weight and preponderance of the evidence. Evidence that the Trust existed or that it held title to the residence has no bearing on whether Williams acted alone in her individual capacity when dealing with Eddens. Furthermore, evidence that both Williams and Nunan had the authority to act on the Trust's behalf does not compel the conclusion that, in this instance, Williams was doing so. Instead, the evidence establishes that Williams never informed Eddens that the Trust existed, never purported to act on the Trust's behalf, and never told Eddens that the

7

Trust held title to the residence. Eddens himself testified that Williams represented to him, and he believed, that it was an order of the court presiding over Williams and Nunan's divorce, not the terms of a trust, that authorized Williams to handle the remodel and sale of the residence. Nunan, the only other beneficiary of the Trust, was unaware of Williams's dealings with Eddens. Evidence that Williams misrepresented to Eddens that she was the "Homeowner" and "Owner" of the residence when she negotiated and executed contracts with Eddens does not support a finding that she was acting on the Trust's behalf rather than individually. Finally, although the court did not make any express findings regarding whether the Trust still existed at the time Williams and Eddens negotiated and signed the contracts, there was undisputed evidence that Nunan had delivered a letter revoking the Trust to Williams in January 2017 and that Nunan was exercising her right to revoke the Trust pursuant to the terms of the Trust, which provided that either Willliams or Nunan had "the power and right to amend, modify or revoke" the Trust by "notice in writing delivered to the Trustee" and that such revocation "shall be effective immediately upon delivery" to the Trustee.

Having considered and weighed all the evidence, we conclude that the trial court's finding that Williams acted alone and in her individual capacity is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. We overrule Eddens's first issue.

## CONCLUSION

Having overruled Eddens's two appellate issues, we affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   March 7, 2024