IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00004-CV

 

Rubye Mangum, as Executrix OF

the Estate of La Vada Oakes and

as Beneficiary of the Will of 

La Vada Oakes and Paul Bradley 

Walker and Brenda Walker Owens,

                                                                                    Appellants

 v.

 

Trent Turner and Donny Turner,

                                                                                    Appellees

 

 

 



From the 77th District Court

Freestone County, Texas

Trial Court No. 04-219-B

 



ORDER of partial dismissal



 

Appellants Brenda Walker Owens and Paul Bradley
Walker have filed a motion to dismiss their appeal but not the appeal of
Appellant Rubye Mangum, as Executrix of the Estate of LaVada Oakes and as
Beneficiary of the Will of LaVada Oakes.  See Tex. R. App. P. 42.1(a)(1).  Appellees Trent Turner and Donny
Turner have filed their amended motion to dismiss appeal as to Appellants Owens
and Walker and thus do not oppose the motion of Appellants Owens and Walker.

Dismissal of this appeal would not prevent a party
from seeking relief to which it would otherwise be entitled.  The motion to
dismiss of Appellants Owens and Walker is granted.  The appeal is dismissed
only as to Appellants Brenda Walker Owens and Paul Bradley Walker.

The amended motion to dismiss appeal is dismissed
as moot.

 

PER CURIAM

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Appeal dismissed only as
to Appellants Owens and Walker;

Amended motion to dismiss
appeal dismissed as moot

Order issued and filed December
5, 2007

Do
not publish






The May release
was never introduced into evidence. 
Dr. Buchmeyer first started treating appellant in January of
1975 when she was 58 years of age. Appellant had fallen and
injured her left forearm and her tailbone at that time. Dr.
Buchmeyer also saw appellant in August of 1980, when he had her
hospitalized for treatment of severe bursitis in her right
shoulder. Dr. Buchmeyer's written report of this incident recited
that appellant "was apparently well until the day prior to
admission [to the hospital] when she lifted her right hand to turn
off a light and developed sudden severe pain in the right shoulder. 
The pain continued unabated and she reported to the clinic. A
physical examination disclosed marked tenderness of the shoulder,
worse at the subdeltoid and subacromial areas. . . . X-rays of the
right shoulder showed bursitis changes." The report continued with
statements that her arm was placed in a sling, and she was started
on anti-inflammatory medications and a general diet, and that with
this treatment regimen her symptoms improved. 
On April 25, 1983, Dr. Buchmeyer referred appellant to Dr.
James Fahey, an orthopedic surgeon in Corsicana, for treatment of
appellant's complaints of pain with her wrist and right shoulder
and neck that she said resulted from the injury she received on
February 7th when the bedrail fell on her wrist. Dr. Fahey's notes
made on April 25th reflected that X-rays taken at the time of
injury showed no injuries to the bone, no fractures and no evidence
of dislocation; that appellant complained of continued pain and
discomfort in her wrist and described numbness from the wrist down
to the fingers; that she had no night pain, no swelling, and no
restricted motion; that she had no evidence of any nerve impairment
by clinical examination in that she had no atrophy and the
description of numbness was not physiologic; and that his
impression was "right wrist pain of questionable etiology." He
recommended an "EMG and nerve conduction study to evaluate possible
peripheral nerve injury." This EMG and nerve conduction study was
performed by Dr. John Ferguson, a neurologist in Waco, on May 3rd. 
Dr. Ferguson concluded his report by stating that "The above
studies are all normal," and "There is no evidence of nerve or
muscle damage from the above tests." 
Dr. Fahey examined her again on May 23, 1983 and on May 30th. 
He concluded that surgery on a tendon was needed, described in his
report as a "release of the first dorsal compartment." This
surgery was performed on June 10, 1983. Nevertheless, appellant
continued having the same problems. She was seen by Dr. Fahey,
after release from the surgery, on July 1, 1983, July 11th, and
August 1st. It was on the August 1st visit that appellant first
complained to Dr. Fahey of pain in her neck and shoulder. Dr.
Fahey concluded his written report that followed the examination of
appellant on August 1st by stating, "Right upper extremity pain of
questionable etiology." He recommended neurologic evaluation. 
Appellant was seen on October 27, 1983, by Dr. Kevin McBride
who is board certified in oral and maxillofacial surgery. Dr.
McBride testified that appellant's neck problem was related to a
problem with her jaw joints; that her problem was "an arthritic
kind of condition"; that the pain was going from the jaw joints to
the neck; that appellant had a moderate arthritic degeneration that
took several years if not many years to get to the degree of
degeneration that he found in her jaw joints; and that he could not
determine a relationship between appellant's problems with her jaw
joints and her wrist injury.
A myelogram and CAT scan were performed on appellant's neck on
May 27, 1987. They revealed abnormalities between the 5th and 6th
vertebrae in the neck. In summary, most of the medical testimony
characterized these abnormalities as degenerative osteo-arthritis. 
Dr. Fahey said that "overshadowing" of one pain over another
only lasts a week or ten days, not two months or four months. He
said he never thought about X-raying appellant's neck and shoulder
because clinically she did not have anything wrong. He also
testified that the X-rays and CAT scan and myelogram showed
degenerative osteo-arthritis of the cervical spine, and that as a
result of this appellant could have experienced neck pain
regardless of any injury. 
Dr. Buchmeyer said he had the myelogram and the CAT scan tests
made in May 1987, because appellant "never was completely free of
[pain]. And we had done everything that we knew to do. She saw me
on a regular basis. I had sent her to different specialists; and
we did not get much help from them. And I was just having a hard
time treating her, a hard time helping her." He said that between
1983 and 1987 he saw appellant in November of 1983; in January and
twice in February, twice in March and once in May and June, and
July and August of 1984; that the visit in August of 1984 was not
related to her neck, but "she was having other problems that were
bothering quite a bit at that time"; that he saw her in January,
March, November and December in 1985; that she came in February of
1986 and stated that her shoulder and her hand were much worse and
that he "started seeing her pretty often again"; that he saw her in
January 1987 because she had fallen in her bathtub and injured her
ribs, fracturing a rib.
The trial was held in February, March and June 1989. 
Following the test set forth in Pool v. Ford Motor Company,
715 S.W.2d 629, 635 (Tex.1986) and Burnett v. Motyka, 610 S.W.2d
735, 736 (Tex.1980), we hold that the evidence we have recited was
legally sufficient to support determinations by the jury that
appellant's total incapacity was related solely to the injury to
her wrist and that such incapacity ended on March 14, 1983. There
was ample evidence, principally the testimony of Dr. Buchmeyer,
appellant, appellant's husband and her son, that would have
supported jury determinations that the injury also included the
shoulder and neck, and that the incapacity extended beyond March
14, 1983. Nevertheless, following the test in Pool and Motyka and
considering all of the evidence, we find that the jury's failure to
find that appellant suffered total incapacity after March 14, 1983,
was not against the great weight and preponderance of the evidence.
Appellant asserts that the evidence of surgery on appellant's
wrist by Dr. Fahey in June 1983 was conclusive proof of total
incapacity during the time of the surgery, requiring a finding that
the jury's answer to question number 3B was against the great
weight and preponderance of the evidence. The jury was asked to
find in response to jury questions numbers 3A and 3B total
incapacity caused by the injury of February 7, 1983. We hold that
under all of the evidence the jury was entitled to believe that
appellant's complaints upon which the surgery was based did not
result from the injury in question.
Appellant's points and contentions are overruled. The
judgment is affirmed.
 
                               VIC HALL
DO NOT PUBLISHJustice