**Opinion issued June 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00826-CV

_____

**JAMES R. BREVELLE, Appellant**

**V.**

**CHARLES ALLEN, Appellee**

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1074422**

---

## MEMORANDUM OPINION

A vehicle driven by Charles Allen struck a vehicle driven by James Brevelle. Allen stipulated to liability, and a jury trial was held on a single measure of damages: diminution in value of Brevelle's 2014 Corvette. The jury determined that the diminution in value was zero dollars, which led to a take-nothing

judgment. In two issues, Brevelle challenges the legal and factual sufficiency of the evidence to support the award of zero dollars in diminution damages.

We affirm.

## Background

James Brevelle owns a 2014 Corvette Stingray LT3. The production date for his vehicle was April 2014. It was less than six months old, and had only 1,800 miles on it, when, in September 2014, Charles Allen's vehicle collided with it. Allen stipulated to liability, and the Corvette was repaired at a dealership at no cost to Brevelle. Brevelle pursued a claim against Allen for the diminution in value of the Corvette, contending that the vehicle was worth less because it had been in an accident.

The parties held a one-day jury trial with just two witnesses: Brevelle (the plaintiff and owner of the Corvette) and Christopher Stillwell (the defense expert witness). Brevelle testified that he was told by a Mac Haik dealership representative that he should be prepared to "take about a $10,000 hit" on his trade-in when he sells it due to the vehicle's accident history. This statement confirmed Brevelle's understanding that vehicles with accident histories have less of a market value than vehicles without accident histories.

Brevelle's vehicle appraisal was admitted into evidence. It states the actual cash value of the vehicle just before the wreck was $60,000. And the loss of value

2

as a result of the accident (which does not include repair costs) is $9,556, representing 16 per cent of the pre-accident actual cash value. Thus, Brevelle presented evidence of diminution-in-value damages equaling or nearly equaling $10,000.

Photographs of the Corvette were attached to Brevelle's appraisal. The jury was not told when the pictures were taken, though the appraisal document indicates that the appraiser personally observed the vehicle as part of his appraisal. The photographs do not reveal any aesthetic irregularity in the vehicle.

Stillwell testified that he is a "physical damage specialist" with a decade of experience appraising vehicles. He has reviewed more than 2,500 vehicle diminution files and testified more than 15 times as an expert. Stilwell agreed that Brevelle's Corvette lost value because of the accident.

Stillwell described Brevelle's Corvette as a "high end sports car." He testified that the vehicle suffered a "moderate" level of damage in the accident. Specifically, there was damage to the fender apron that the vehicle's fender attaches to as well as the front bumper, lower grill area, hood, and left fender. The vehicle's frame, however, was not damaged, according to Stillwell's assessment. Stillwell testified that an average purchaser would consider cosmetic damage and damage to structural reinforcement pieces to be less significant than frame damage and, as a result, would assign less loss-of-value to a vehicle without frame damage.

Stillwell reviewed three additional photographs of the Corvette, which were admitted into evidence. According to Stillwell, these three pictures confirmed that Brevelle's Corvette did not have frame damage but, instead, had only structural reinforcement damage, which the parties agreed had been repaired.

Stillwell also discussed a damage-assessment-calculation form, which was admitted into evidence. Stillwell testified that the *maximum* loss of value for a wrecked vehicle, if it has been properly repaired, has clear title, and is sold by a willing seller and purchased by a willing buyer, is 10 per cent of the actual cash value before the accident. The calculation form assists in estimating the loss more precisely, given various factors, including the mileage, the level of damage, and whether there was prior damage. Using the form, Stillwell testified that his estimation of the loss in value—the diminution in value—of the Corvette due to this accident was $2,168.46. Stillwell clarified that this was not an exact appraisal but was, instead, an estimation of the actual loss, which might be more or less.

Stillwell opined that it is "very possible" a willing buyer would reduce the value of this vehicle, in his estimation, by $2,168.46, because of its accident history but that it was also "very possible" that a buyer might reduce the value by a larger amount, such as $4,000, or a smaller amount, such as $1,000. According to Stillwell, one cannot say with certainty what the diminution in value actually is because it depends on the buyer's and seller's willingness to complete the sale

transaction at a given point in time. He reiterated that the $2,168.46 amount was an "estimate opinion" rather than an exact calculation. But he testified that the Corvette "absolutely" has lost some value due to the accident.

Stillwell agreed that an exact copy of a vehicle that has not been in an accident would be preferable to a willing buyer, which is "common sense." He further agreed that an accident places a "stigma" on a car for resale purposes.

After the witnesses testified, the court charged the jury. The jury was asked a single question: what sum of money would fairly and reasonably compensate James Brevelle for the diminution in value, if any, of his Corvette Stingray resulting from the accident caused by Allen. The jury answered the question with zero dollars in diminution damages.

Brevelle moved for a judgment notwithstanding the verdict, a new trial, and reconsideration. All motions were denied, and the trial court entered a final take-nothing judgment, which Brevelle has appealed.

## Standards of Review

To successfully challenge the legal sufficiency of a factfinder's ruling that the challenging party failed to meet its burden of proof, the challenging party "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts" necessary to meet the burden of proof. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We begin our review by examining only the

evidence that supports the challenged finding, ignoring all evidence to the contrary. *Id.* If there is no evidence to support the factfinder's finding, then, the entire record is examined to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). We will affirm the factfinder's finding unless the evidence conclusively establishes the opposite conclusion as a matter of law. *Dow Chem.*, 46 S.W.3d. at 241 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

To successfully challenge the factual sufficiency of a factfinder's finding that the challenging party failed to meet its burden of proof, the challenging party "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. We consider and weigh all the evidence, and uphold the challenged finding unless "the evidence is so weak" or "the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* A court of appeals may not reverse the judgment unless it clearly states why the factfinder's finding is factually insufficient. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

A jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any witness's testimony. *Benavente v. Granger*, 312 S.W.3d 745, 748 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

## Discussion

In challenging the legal and factual sufficiency of the evidence supporting the jury's verdict, Brevelle argues that there was no evidence that the diminution equaled exactly zero dollars, given that both witnesses presented some evidence that it equaled a higher amount. But, as discussed below, the jury was not bound by the witnesses' damages figures and was free to determine a different damages amount, based on the evidence presented and its own knowledge and experience.

Stillwell, an expert, testified about the level of damage to Brevelle's Corvette, how diminution in value is calculated, and the factors that go into the calculation. He estimated a diminution amount of a little over $2,000. This was the lesser of the two figures presented to the jury. Stillwell agreed that the number could be more or less than his $2,000 estimate, and he discussed the factors that would affect the analysis.

Even uncontroverted expert testimony is not binding on a jury as long as the subject of the testimony is not one for experts alone. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998) ("The general rule is that opinion testimony, even when uncontroverted, does not bind the jury unless the subject matter is one for experts alone."); *Culwell v. Diaz*, No. 05-12-00093-CV, 2013 WL 2609995, at *3 (Tex. App.—Dallas June 7, 2013, no pet.) (mem. op.). Diminution in value of a

vehicle after it has been in a wreck but has been repaired does not require expert testimony. *See Culwell*, 2013 WL 2609995, at \*3. A jury is free to disbelieve expert testimony on the issue of diminution in value. *Id.* (citing *City of Keller*, 168 S.W.3d at 822).

> As we explained more than forty years ago, a
>
> jury is at liberty to reach its conclusion by blending all of the evidence admitted before it, aided by its members' own experience and knowledge of the subject of inquiry. Jurors are not compelled to credit all the testimony of any witness or to reject it all. Opinion evidence is not conclusive. A jury may consider and accept or reject opinions or it may find its own opinion from evidence and by utilizing its own experience in matters of common knowledge.

*Coastal Indus. Water Auth. v. Reynolds*, 503 S.W.2d 593, 601 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

The jury had evidence that the damage to Brevelle's Corvette did not compromise the vehicle's frame, that damage to structures other than the frame are considered less consequential, and that the diminution could be less than Stillwell's estimate of just over $2,000. The jury was shown pictures of the vehicle before and after the wreck and received testimony that the damage had been repaired. The jury reasonably could have applied its common knowledge and experience to evaluate the loss in value based on this evidence. According to the jury, that amount was zero. There was adequate evidence for the jury to make that determination, and it is

8

not so against the great weight and preponderance of the evidence to make it clearly wrong and unjust.

Brevelle has not established a legal or factual insufficiency of the evidence in support of the jury's verdict. *See Culwell*, 2013 WL 2609995, at *3 (reversing trial court's order that granted JNOV to plaintiff car owner and awarded car owner over $15,000 in damages; concluding that jury's verdict of zero dollars in diminution in value damages was supported by adequate evidence). We overrule both issues.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Justices Higley, Brown, and Caughey.